UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

ENVIRONMENT TEXAS CITIZEN LOBBY, INC.,
and SIERRA CLUB,

               Plaintiffs,                               C.A. No. 4:10-cv-4969

      v.

EXXONMOBIL CORPORATION,
EXXONMOBIL CHEMICAL COMPANY, and
EXXONMOBIL REFINING AND SUPPLY COMPANY,

               Defendants.

_____

## PLAINTIFFS' PRETRIAL BRIEF

## I.    SUMMARY.

This case is a Clean Air Act ("CAA" or "the Act") "citizen suit," brought under 42 U.S.C. § 7604(a)(1)(A). Plaintiffs are environmental groups. They claim Defendants' ("Exxon") petrochemical complex in Baytown ("the Complex") has violated and continues to violate its five Clean Air Act permits, which are issued pursuant to Title V of the Clean Air Act, 42 U.S.C. § 7661-7661f. The Complex is comprised of a refinery, a chemical plant, and an olefins plant (a type of chemical plant). Many, but not all, of Exxon's violations, which are detailed in seven counts

in Plaintiffs' Complaint, stem from "upsets" (also called "emission events") at the Complex. The number of violations is enormous.

Many of Exxon's violations directly cause emissions of dangerous air contaminants – including carcinogens, toxicants, and ozone-forming chemicals – on a regular basis. Other violations increase the risk that dangerous pollutants will be emitted. Plaintiffs have members who are adversely affected by Exxon's illegal air pollution and who have a stake in seeing that Exxon fully complies with its operating permits. They seek a halt to Exxon's permit violations and imposition of a monetary civil penalty (not to be paid to Plaintiffs) for the violations.

## II.   OVERVIEW OF CITIZEN SUIT LAW.

> The Clean Air Act provides that citizens may bring a civil action against any person…who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter…

42 U.S.C. § 7604(a)(1). The definition of "person" includes "corporation." 42 U.S.C. § 7602(e). The definition of "emission standard or limitation" includes standards or limitations in a Title V permit. 42 U.S.C. § 7604(f)(4); St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., 399 F. Supp. 2d 726 (E.D. La. 2005) (finding liability for Title V permit violations in citizen suit).

The CAA imposes strict liability upon owners and operators who violate the Act. E.g., Pound v. Airosol Co., Inc., 498 F.3d 1089, 1097 (10th Cir. 2007); United Steelworkers of Am. v. Ore. Steel Mills, Inc., 322 F.3d 1222, 1229 n.4

(10th Cir. 2003); <u>Sierra Club v. Pub. Serv. Co. of Colo., Inc.</u>, 894 F. Supp. 1455, 1459 (D. Colo. 1995); <u>U.S. v. Hugo Key & Son, Inc.</u>, 731 F. Supp. 1135, 1140 (D. R.I. 1989); <u>U.S. v. Harford Sands, Inc.</u>, 575 F. Supp. 733, 735 (D. Md. 1983).

This Court stated in its ruling on Exxon's summary judgment motion, "citizen suits were *intended* [by Congress] to be a mechanism for the public to second-guess the adequacy of an agency's response to Clean Air act violations. As an antidote to regulatory capture, a citizen suit is itself an integral part of the regulatory scheme created by Congress." <u>Env't Texas v. ExxonMobil</u>, C.A. No. 4:10-cv-04969, Docket Entry [126], p. 9 (April 3, 2013), <u>adopted</u>, Docket Entry [135] (S.D. Tex. May 2, 2013).

## A.   <u>Establishing Liability.</u>

The CAA citizen suit provision allows for suits over purely historical violations of standards that are no longer being violated ("alleged to *have violated*"), so long as they were "repeated." As this Court noted, proof that a standard has been violated two or more times establishes that the violation has been "repeated" for purposes of the CAA. <u>Env't Texas v. ExxonMobil</u>, C.A. No. 4:10-cv-04969, Docket Entry [126], at pp. 12-13.

The citizen suit provision also allows for suits to enforce standards that the defendant continues to violate (alleged "to be *in violation*"). To establish liability for continuing violations, the citizen plaintiff must prove that the defendant was "in

violation" of a particular standard at the time suit was filed.  Natural Resources

Defense Council v. Texaco Ref. and Marketing, Inc., 2 F.3d 493, 501 (3d Cir.

1993) (Clean Water Act case, citing Gwaltney of Smithfield v. Chesapeake Bay

Foundation, 484 U.S. 49, 66 (1987)).[1]  The Fifth Circuit and this Court have held

that a citizen plaintiff establishes the defendant is "in violation"

> (1) by proving violations that continue on or after the date the complaint is
> filed, or (2) by adducing evidence from which a reasonable trier of fact
> could find a continuing likelihood of recurrence in intermittent or sporadic
> violations.

Carr v. Alta Verde Indus., Inc., 931 F.2d 1055, 1062 (5th Cir. 1991) (citing

Chesapeake Found., Inc. v. Gwaltney of Smithfield, Ltd., 890 F.2d 690, 693 (4th

Cir. 1989) ("Gwaltney III")); Env't Texas v. ExxonMobil, 4:10-cv-04969 [Docket

Entry 126], p. 11 (applying Carr to CAA citizen suit).  Even a single post-

complaint violation is "conclusive" proof that a violation is continuing and that a

defendant is thus "in violation" within the meaning of the citizen suit provision.

Natural Res. Def. v. Texaco Ref., 2 F.3d at 502 (citing Carr, 931 F.2d at 106 n. 12).

Alternatively, a plaintiff can establish that a defendant is "in violation" "by proving

that the same inadequately corrected source of trouble will cause recurring

violations" of a standard.  Id. at 499.

---

[1] "Because the CAA and CWA are similar in mechanism and operation, courts routinely turn to
cases decided under one to interpret the other." Wildearth Guardians v. Lamar Utilities Bd., 2012
WL 1059981 (D. Colo. March 29, 2012), at *3, n.1.

Once the citizen plaintiff establishes liability for repeated or continuing violations of a particular standard, the court may adjudicate (and award appropriate relief to redress) the defendant's pre- and post-complaint violations of that standard.  See, e.g., Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1135 (11th Cir. 1990).

The only statutory limits to CAA citizen enforcement suits are that plaintiffs must give 60 days notice before filing suit (notice is not disputed here), and that the government must not be "diligently prosecuting" a "civil action in court" for the same violations (not at issue for the stipulated list of violations to be tried here).  42 U.S.C. § 7604(b)(1).  Under the CAA, a government *administrative* action does *not* bar a citizen suit.  Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp., 207 F.3d 789, 795 (5th Cir. 2000); Env't Texas v. ExxonMobil Corp., 4:10-cv-04969, Docket Entry [126], pp. 8-10.  Nor does an agency's decision *not* to take enforcement bar a citizen suit.  Id. at 8-10.

A defendant's own air emission monitoring records and emission reports to the government are sufficient to establish CAA violations.  Concerned Citizens Around Murphy v. Murphy Oil USA, Inc., 686 F. Supp. 2d 663, 680 (E.D. La. 2010) (summary judgment granted where company's "unauthorized discharge reports" demonstrated violations of permit limits); Pub. Serv. of Colo., 894 F. Supp. at 1460-1461 (summary judgment granted because company's monitoring

data and reports to government "provide undisputed evidence" of permit

violations); Friends of the Earth v. Potomac Elec. Power, 419 F.Supp. 528, 533 (D.

D.C. 1976) (summary judgment granted where defendant's own records reflect

violations); cf. GenOn, 2011 U.S. Dist. LEXIS 29098 (same for CWA case);

United States v. Aluminum Co. of Am., 824 F. Supp. 640, 648-649 (E.D. Tex.

1993) (granting summary judgment for federal government in CWA case because

monitoring reports submitted to EPA were "conclusive evidence" of violations).

It is not a defense that a facility would have to shut down or reduce

operations in order to achieve compliance with its permit.  30 Tex. Admin. Code §

122.143(4).  Texas Commission on Environmental Quality ("TCEQ") regulations,

30 Tex. Admin. Code § 101.222(b) and (c), do provide a limited affirmative

defense *to penalties* in enforcement actions involving unauthorized emissions from

upset events, provided that a defendant can prove that numerous specified criteria

are all met, but this is *not* a defense to liability or to claims for injunctive relief.

Luminant Generation Co. LLC v. U.S. EPA, 714 F.3d 841, 853, 855 (5th Cir.

2013).  Plaintiffs seek injunctive relief under all 7 counts of the Complaint.

### B.    Relief Available Under The CAA Citizen Suit Provision.

A district court has jurisdiction in citizen suits "to enforce…an emission

standard or limitation…and to apply any appropriate civil penalties…"  42 U.S.C.

§ 7604(a).

Courts may invoke the full range of equitable remedies necessary "to provide complete relief in light of the statutory provisions." Mitchell v. DeMario Jewelry, Inc., 361 U.S. 288, 291-292 (1960); Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) (CWA citizen suit).  In citizen suits, courts:

- *Issue declaratory relief.* E.g., Aransas Project v. Shaw, No. 2:10-CV-075, 2013 WL 943780, at *788 (S.D. Tex. Mar. 11, 2013) (ESA); Potomac Electric Power, 419 F. Supp. at 531-532, 535-536 (CAA)**.**

- *Issue injunctions ordering a defendant to stop violating permit terms.* Humane Soc. of U.S. v. HVFG, LLC, 2010 WL 1837785, at *1, 15 (S.D. N.Y. May 6, 2010) (CWA); PIRG v. Powell Duffryn Terminals, Inc., 720 F. Supp. 1158, 1167-1168 (D. N.J. 1989) (CWA); see U.S. Pub. Interest Research Group v. Atl. Salmon of Me., LLC, 257 F. Supp. 2d 407, 435, aff'd, 339 F.3d 23, 27 (1st Cir. 2003) (in CWA case, ordering defendant to operate in "strict compliance" with soon-to-be-issued permit).

- *Order a special master or independent monitor to oversee compliance efforts.* Humane Soc., 2010 WL 1837785, at *1, 15 (CWA); Interfaith Community Organization v. Honeywell Int'l, 263 F.Supp.2d 796, 834 (D. N.J. 2003) (RCRA); cf. U.S. v. Metropolitan Dist. Com'n, 679 F. Supp. 1154, 1156 (D. Mass. 1988) (CWA).

With respect to a penalty, a court must consider the "penalty assessment criteria" set forth in 42 U.S.C. § 7413(e) (described in Section V, below).  Pound, 498 F.3d at 1097-1098 (the CAA "requires that the district court consider" these criteria).  Civil penalties serve the purposes of "retribution and deterrence, in addition to restitution." Tull v. United States, 481 U.S. 412, 422 (1987) (CWA case).  "[F]or civil penalties to serve a deterrent function, the amount of the penalty must be high enough to ensure that there is no incentive for violators to simply

absorb the penalty as a cost of doing business."  United States v. A.A. Mactal

Constr. Co., Inc., 1992 WL 245690, at *2 (D. Kan. April 10, 1992) (CAA case).

Courts also award attorneys fees and costs to citizen suit plaintiffs pursuant

to 42 U.S.C. § 7604(d).

Plaintiffs seek all of these forms of relief.

## III.   LIABILITY ON ALL SEVEN COUNTS WILL BE ESTABLISHED.

Violations of more than one emission standard or limitation occurring on the

same day are considered separate days of violation.  42 U.S.C. § 7413(b) (setting a

maximum fine "per day for each violation" of the Act); Atl. States Legal Found. v.

Tyson Foods, Inc., 897 F.2d 1128, 1138-1139 (11th Cir. 1990) (construing similar

language in CWA, court held violations of multiple limits on the same day are

subject to separate daily penalties).

Separate instances of a violation that occur on different calendar days are

counted separately.  But for a continuous violation that extends uninterrupted

beyond the calendar day on which it begins, a "day" is a 24-hour period, not a

calendar day.  S.F. Baykeeper v. W. Bay Sanitary Dist., 791 F. Supp. 2d 719, 762

(N.D. Cal. 2011) (construing identical language in CWA).  Thus, if Exxon were

found to have violated an emission limit for sulfur dioxide ($SO_2$) over a continuous

period lasting 24 hours or less, Exxon would be liable for one "day" of violation.

If Exxon were found to have violated emission limits for both $SO_2$ and carbon

monoxide during an upset event with unauthorized emissions that continued for 36 hours, Exxon would have committed two emission limit violations, each extending into two 24-hour periods, for a total of four "days of violation."

Exxon is required to report and to maintain records of permit violations at the Baytown Complex.  Specifically, it must keep records of each "emissions event," which is defined as "[a]ny upset event or unscheduled maintenance, startup, or shutdown activity, from a common cause that results in *unauthorized emissions* of air contaminants from one or more emissions points at a regulated entity."  Tex. Health and Safety Code § 382.0215(a)(1) (emphasis added); 30 Tex. Admin. Code § 101.1(28) (same).  Those emission events involving an emission of an air contaminant above a defined "reportable quantity" must be reported by Exxon to TCEQ's publicly-accessible State of Texas Electronic Environmental Reporting System ("STEERS") database.  Tex. Health & Safety Code § 382.0215(b).  These reports are known as "STEERS reports."  Records of all other emission events are maintained on-site at the Baytown Complex; such emission events are called "recordable emission events."  30 Tex. Admin. Code § 101.201(b).  Because all of these emission events – whether reported (through STEERS) or recorded (in-house) – involve "unauthorized" emissions, every such event involves at least one violation of a permit limit.  Emission events at the Baytown Complex frequently involved emissions of more than one type of

pollutant, from more than one permitted or unpermitted source, causing violations of more than one emission limit (emission limits are pollutant-specific).

Additionally, twice yearly Exxon submits to TCEQ a report describing any "deviations" from the requirements of the Complex's Title V permits.  30 Tex. Admin. Code § 122.145(2).  These reports are known as "deviation reports."

Mag. Judge Smith ordered the parties to stipulate to the contents of these various records and reports for every alleged violation to be adjudicated at trial. This information is set forth in tables (Exhibits 1A-7E) for each of the Complaint's counts.  The stipulations set forth the facts necessary to prove each of the alleged violations.  These facts show Exxon is "in violation" of the vast majority of Title V permit terms at issue (violations both before and after the Complaint was filed), and that Exxon "has violated" other Title V permit terms (multiple violations prior to the Complaint).[2]  Summary charts of these data will be presented.

The seven counts allege the following types of violations:

*Count I:*  The Baytown Refinery's permit states that any emission of any air contaminant that results from an upset event or any activity associated with an upset is not authorized.  Exhibits 1A and 1B prove that Exxon committed 10,799 days of violation of this emission limit.

---

[2] In addition, and as a separate basis for finding liability, Plaintiffs will prove that the bulk of the violations were caused by "the same inadequately corrected source of trouble":  poor maintenance practices at the Baytown Complex.  For that reason, too, Exxon is "in violation" of the CAA as alleged in the seven counts.

*Count II:*  The permits for all three plants authorize emissions only of specifically named contaminants, only from specifically identified emission points, and subject to pounds per hour emission limits.  Exhibits 2A and 2B prove Exxon committed 13,855 days of violation of these emission limits.

*Count III:*  The permits for all three plants incorporate the Texas "HRVOC Rule," which limits facility-wide emissions of highly reactive volatile organic compounds to no more than 1,200 pounds per hour.  Exhibit 3 proves that Exxon committed 18 days of violation of this emission limit.

*Count IV:*  The permits for all three plants incorporate federal regulations prohibiting visible emissions from flares for periods exceeding five minutes during any two-hour period.  Exhibit 4 proves that Exxon committed 44 days of violation of this emission limit.

*Count V:*  The permits for all three plants incorporate federal regulations requiring flares to operate with a pilot flame present at all times.  Exhibit 5 proves that Exxon committed 32 days of violation of this emission standard.

*Count VI:*  The permits for all three plants prohibit fugitive emissions (emissions that do not exit from a stack or vent).  Exhibit 6 proves that Exxon committed 235 days of violation of this emission limit.

*Count VII:*  Count VII covers a variety of violations of emission limits, as well as operating, monitoring, and recordkeeping requirements described in

Exxon's semi-annual deviation reports.  Exhibits 7A-7E prove that Exxon

committed 4,677 days of violation of these emission standards and limitations.

## IV.   THE EVIDENCE WILL SHOW THAT A DECLARATORY JUDGMENT AND AN INJUNCTION ASSURING COMPLIANCE WITH THE CLEAN AIR ACT ARE WARRANTED.

Plaintiffs seek a declaration that Exxon is violating its Title V permits.

Exxon's own records and reports to the government prove this, and this Court's

ruling on Exxon's motion for summary judgment has resolved many of Exxon's

claimed defenses to liability.  Declaratory relief is warranted on the violations

remaining in the stipulated tables (Exhibits 1A-7E).

Plaintiffs also seek an injunction ordering Exxon to comply with its Title V

permits.  Plaintiffs satisfy the four-factor test for a permanent injunction:

> A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The evidence at trial will support a finding of irreparability in this case.

"Environmental injury, by its nature, can seldom be adequately remedied by

money damages and is often permanent or at least of lasting duration, *i.e.,*

irreparable." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 545 (1987);

U.S. v. Marine Shale Processors, 81 F.3d 1329, 1360 (5th Cir. 1996); Communities for a Better Env't v. Cenco, 179 F. Supp.2d 1128, 1148 (C.D. Cal. 2001).

The evidence will also show that damages cannot remedy Plaintiffs' members' injuries. Exxon continues to illegally emit dangerous contaminants into the atmosphere and Plaintiffs' members and the general public breathe the contaminants. The contaminants can sicken people, increase cancer risk, force people to change their everyday behavior to avoid offensive odors, and create fears of fire or explosion.

In the balance of the hardships, the only harm that Exxon could claim would be economic. But as one court said in an analogous context, "[e]conomic harm [to the violator] is assumed under the scheme of the CWA. Congress, in enacting the CWA, sought to allocate the external costs of water pollution to dischargers." American Canoe Ass'n v. City of Wilson Wastewater Treatment Plant, 1998 U.S. Dist. LEXIS 7766, at *28 (E.D. N.C. 1998) (preliminary injunction granted over city's objection that taxpayers would suffer). In fact, TCEQ regulations anticipate plant closings, if they are necessary to achieve compliance. 30 Tex. Admin. Code § 122.143(4) (necessity of halting or reducing permitted activity to comply not a defense). Exxon cannot realistically argue that compliance is unaffordable, given its vast resources. Any economic harm caused by permit compliance would not outweigh the clear environmental and public health benefits to be gained from an

injunction designed to minimize illegal emissions.  See, e.g., Tenn. Valley Auth. v. Hill, 437 U.S. 153, 187-188 (1978) ($100 million cost of upgrading dam does not outweigh ecological value of endangered fish).

Moreover, "[i]t is plain that the public interest calls upon the courts to require strict compliance with environmental statutes."  Conservation Law Found. v. Watt, 560 F. Supp. 561, 583 (D. Mass.), aff'd sub. nom Mass. v. Watts, 716 F.2d 946 (1st Cir. 1983).  The public would benefit here both from reduced air pollution and from a ruling that our laws are meant to be followed.

Plaintiffs also request that a special master be appointed, at Exxon's expense, to oversee all aspects of Exxon's permit compliance efforts until the company demonstrates at least one year of continuous compliance with its Title V permits.  The sheer magnitude and variety of the violations, and Exxon's steadfast refusal to admit any shortcomings, justify this remedy.  The charge of the special master in the Honeywell case is applicable here.  Honeywell, 263 F. Supp. 2d at 834 (master authorized to take whatever reasonable steps necessary, and retain services of professionals and technical people as needed, to assure compliance).

## V.   THE EVIDENCE WILL SHOW THAT EXXON SHOULD BE ORDERED TO PAY A SUBSTANTIAL CIVIL PENALTY.

Courts have taken two approaches to setting a CAA penalty:  "top down," in which the maximum total penalty is calculated[3] and any appropriate reductions are made by considering the six enumerated elements of 42 U.S.C. § 7413(e) as mitigating factors; and "bottom up," in which the economic benefit gained by avoiding compliance is established, and the remaining five elements of § 7413(e) are used to adjust the figure up or down.  U.S. v. Citgo Petroleum Corp., 723 F.3d 547, 552 (5th Cir. 2013) (construing nearly identical CWA penalty provision).  The Fifth Circuit noted that courts often adopt the top down approach.  Marine Shale, 81 F.3d 1329, 1337 (5th Cir. 1996) (CWA case).  Penalty calculation "is not an exact science;" the importance of each penalty factor cannot "be precisely delineated."  Citgo, 723 F.3d at 551 (quoting Marine Shale, 81 F.3d at 1338).

In this case the two approaches are effectively the same, because the evidence will show that Exxon's economic benefit of non-compliance is at least $634 million, which is roughly equivalent to the maximum penalty for all violations of Counts II and VII, which constitute the bulk of the violations in the case.  Economic benefit will be calculated by Plaintiffs' economist Jonathan Shefftz, who uses inputs from Exxon itself and from Plaintiffs' engineering expert

---

[3] The maximum penalty per day of violation is $37,500 for violations occurring on January 13, 2009, and after, and $32,500 for violations occurring before January 13, 2009.  40 C.F.R. § 19.4.

Keith Bowers as to capital expenditures delayed, and operation and maintenance costs avoided, by Exxon's failure to implement the measures needed to comply with its permits.  See Citgo, 723 F.3d at 552.  The other § 7413(e) factors similarly support little or no downward adjustment from the maximum penalty amount:

*Size of business:*  Exxon can afford to pay any penalty this Court assesses.

*Economic impact of penalty:*  Exxon will only feel the economic impact of an extremely large penalty, though it could absorb even the maximum penalty.

*Violator's full compliance history:*  Exxon's full compliance history is poor. This case covers thousands of days of violations over eight years.  An additional 115 large emission events at the Baytown Refinery (Exhibit 8), reported to EPA under a 2005 consent decree, caused many hundreds of additional days of violation.  Compare Citgo, 723 F.3d at 553 (950 days of violation "reflected a lack of environmental responsibility and a general disregard of [defendant's] duty to operate its business safely").

*Violator's good faith efforts to comply:*  The evidence at trial will show that Exxon could have complied with its permits, but simply did not spend the money required to do so.  Also, as soon as Exxon received Plaintiffs' notice of intent to sue, company officials contacted TCEQ seeking an administrative enforcement order designed to undercut this federal enforcement action.  The resulting February 2012 Consent Agreement allows Exxon to *wipe violations off the books* (violations

are literally deemed to be non-violations) by paying a pre-set, often minimal stipulated penalty – some of which goes to an Exxon-affiliated organization.

*Duration of the violation:*  Exxon committed more days of violation than there have been actual days over the past 8 years.  Its unauthorized emissions from leaks alone total more hours than there have been actual hours in the past 8 years.

*Payment by the violator of penalties previously assessed for the same violation:* Plaintiffs have ascertained that in agreed orders, TCEQ has assessed $1,146,132 for some of the violations alleged in this case.

*Seriousness of the violation:*  The evidence will show that Exxon's violations can adversely affect public health, create nuisance-type impacts that interfere with daily life, and create fears of fire and explosion.  Plaintiffs' expert Dr. Edward Brooks will testify about public health impacts.  Plaintiffs' expert Dr. Ranajit Sahu will testify that the actual quantities of illegal emissions from Exxon's flares are often far greater than Exxon reports (Exxon follows EPA and TCEQ rules on reporting flare emissions, but those rules lead to gross undercounting of emissions).  And Plaintiffs' members will testify about their personal experiences living near the Baytown Complex.

## VI.  THE EVIDENCE WILL SHOW PLAINTIFFS HAVE STANDING.

A violation-by-violation approach to assessing standing is not required in environmental citizen suits.  Env't Texas v. ExxonMobil, Docket Entry [126], p.

18 (citing <u>Sierra Club v. Cedar Point Oil</u>, 73 F.3d 546, 556-558 (5th Cir. 1996)).

Plaintiffs are non-profit environmental advocacy groups that have members who live near the Baytown Complex.[4]  Organizations like Plaintiffs have standing to bring suit on behalf of their members if:

> (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.

<u>Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977).  The evidence will show that Plaintiffs and their members satisfy these requirements.

## A.    Plaintiffs' Members Have Standing To Sue On Their Own.

Individuals have standing to sue in their own right when:  "(1) [they] have suffered an actual or threatened injury ["injury in fact"]; (2) the injury is 'fairly traceable' to the defendant's actions; and (3) the injury likely will be redressed if

---

[4] Under Texas law, nonprofit corporations are not required to have members, Bus. Orgs. Code § 22.151(a). Sierra Club's bylaws nonetheless provide that the organization does have "members" as that term is used in California corporate law (Sierra Club is incorporated in California).

Environment Texas's dues-paying members, on the other hand, do not meet the requirements of the Texas statute.  However, it is settled that an incorporated group need not have "members" as defined under a state corporate law to have associational standing to bring a citizen suit on their behalf.  <u>FOE v. Chevron</u>, 129 F.3d 826 (5th Cir. 1997); <u>see</u> <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 341-45 (1977) (commission had standing to assert the interests of individual apple growers even though the apple growers were not its members). For associational standing, what matters is whether there is "a sufficient nexus" between the interests of an organization and those it represents.  <u>Church of Scientology of Cal. v. Cazares</u>, 638 F.2d 1272, 1279 (5th Cir. 1981).  In <u>FOE</u>, the Fifth Circuit held that the fact that persons who used the Texas waterways in question had joined the environmental group as "members" and voluntarily associated to further the purpose of the organization was sufficient to confer standing despite the group's failure to follow the steps necessary to have members under District of Columbia corporate law.  129 F.3d at 828-829.  The evidence in this case will show a significant nexus between the purposes and activities of Environment Texas and the interests of those who join it.

[the organization] prevails in the lawsuit." Murphy Oil, 686 F. Supp. 2d at 669

(citing Crown Petroleum, 207 F.3d at 792).  Only one member needs to meet these

requirements for a group to have standing.  Sierra Club v. TVA, 430 F.3d at 1344.

### 1.    Members have suffered "injury in fact."

Plaintiffs' members breathe and smell polluted air, and are concerned for

their health and the health of their families.  "[B]reathing and smelling polluted air

is sufficient to demonstrate injury-in-fact and thus confer standing under the

CAA."  Crown Petroleum, 207 F.3d at 792 (smelling "sulfurous odors while in the

home, in the yard, or driving through town" demonstrates "a cognizable injury" for

standing purposes); see Cmty's for a Better Envt. v. Cenco Ref. Co., 180 F. Supp.

2d 1062, 1075 (C.D. Cal. 2001) ("breathing even slightly polluted air entails a

health risk" that is an injury in fact); LaFleur v. Whitman, 300 F.3d 256, 271 (2d

Cir. 2002); Murphy Oil, 686 F. Supp. 2d at 671.  Emissions do not need to cause

the ambient levels of air pollutants to exceed regulatory limits for a person to

suffer an injury-in-fact.  Sierra Club v. Franklin County Power of Illinois, 546 F.3d

918, 925 (7th Cir. 2008); LaFleur, 300 F.3d at 270-72.

Even "being reasonably concerned about the health effects of air pollution"

establishes an injury in fact for standing purposes.  Murphy Oil, 686 F. Supp. 2d at

671; St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C., 354 F.

Supp. 2d 697, 702-703 (E.D. La. 2005); see Friends of the Earth v. Laidlaw Envtl.

Serv., Inc., 528 U.S. 167, 184 (2002) (reasonable fear of harm from water pollution); Sierra Club v. Cedar Point Oil, 73 F.3d 546, 555 (5th Cir. 1996) (fear that pollution will impair recreational activities).

### 2.    The injuries are fairly traceable to Exxon.

To establish that their injuries are connected to the defendant's violations, plaintiffs are not required to "connect the exact time of their injuries to the exact time of an alleged violation" (although some of Plaintiffs' members have done just that). Crown Petroleum, 207 F.3d at 793.  Nor does the "fairly traceable" element require plaintiffs to show "to a scientific certainty" that the defendant's emissions, and the defendant's emissions alone, "caused the precise harm suffered by the plaintiffs." Save Our Comty., 971 F.2d at 1161 (cites omitted) (CWA case); Cedar Point Oil, 73 F.3d at 558 (same); Pub. Interest Res. Group of New Jersey v. Powell Duffryn Terminals, Inc., 913 F.3d 64, 72, n.10 (3rd Cir. 1990) ("tort-like causation is not required" to prove traceability in a citizen suit).  Plaintiffs need only show, and they will here, that a defendant is emitting pollutants capable of causing or contributing to the types of injuries asserted by the plaintiffs.  Powell Duffryn, 913 F.2d at 72; Chalmette Ref., 354 F. Supp. 2d at 703.

### 3.  The injuries can be redressed by an order from this Court.

It is settled that an injunction requiring Exxon to cease violating the CAA and the imposition of civil penalties will each redress Plaintiffs' members' injuries. Crown Petroleum, 207 F.3d at 793.

## B.  This Suit's Purpose Is Germane To The Plaintiffs' Purposes.

The purpose of both Plaintiff groups is to protect air quality, public health, and the environment, and this lawsuit is germane to that purpose.  Franklin County Power, 546 F.3d at 924 (CAA citizen suit is germane to purpose of Sierra Club); Sierra Club v. Tennessee Valley Auth., 430 F.3d at 1345 (11th Cir. 2005) (same).

## C.  The Participation Of Individual Members Is Not Required.

Courts routinely hold participation of individual members is not required in an environmental citizen suit because no monetary damages or particularized relief to a single person or group is sought.  E.g., Chalmette Ref., 354 F. Supp. 2d at 701.

Dated:  January 17, 2013

/s/ Philip H. Hilder                          /s/ David A. Nicholas
Philip H. Hilder                             S.D. Tex. Bar No. 89667
State Bar No. 09620050                       20 Whitney Road
Southern District of Texas Bar No. 2474      Newton, Massachusetts  02460
William B. Graham                            (617) 964-1548 (phone)
State Bar No. 24053236                       (617) 663-6233
Southern District of Texas Bar No. 1132514
Hilder & Associates, P.C.
819 Lovett Blvd.                             Joshua R. Kratka
Houston, Texas  77006-3905                   S.D. Tex. Bar No. 962922
(713) 655-9111 (phone)                       National Environmental Law Center
(713) 655-9112 (fax)                         44 Winter Street, 4th Floor

Boston, Massachusetts  02108

PHILIP H. HILDER:                (617) 747-4333 (phone)
ATTORNEY-IN-CHARGE     (617) 292-8057 (fax)
FOR PLAINTIFFS

## **<u>CERTIFICATE OF SERVICE</u>**

On January 17, 2014, a true and correct copy of Plaintiffs' Pretrial Brief was served through the Court's ECF system and in compliance with the Federal Rules of Civil Procedure on all Defendants' counsel of record.

*/s/ Philip H. Hilder*
Philip H. Hilder