UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

ENVIRONMENT TEXAS CITIZEN LOBBY, INC.,
and SIERRA CLUB,

        Plaintiffs,                      C.A. No. 4:10-cv-4969

    v.

EXXONMOBIL CORPORATION,
EXXONMOBIL CHEMICAL COMPANY, and
EXXONMOBIL REFINING AND SUPPLY COMPANY,

        Defendants.

---

## PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, EXPERT WITNESS FEES, AND COSTS

In its Revised Findings Of Fact And Conclusions Of Law ("Revised Findings," ECF No. 257), this Court held that "an award of Plaintiffs' reasonable attorneys' fees, expert fees, and costs is appropriate as the Plaintiffs have substantially prevailed," and the Court directed the Plaintiffs to file an application for fees.  Revised Findings, p. 100.[1]

---

[1] An award of "costs of litigation (including reasonable attorney and expert witness fees)" where "appropriate" is authorized in the Clean Air Act, 42 U.S.C. § 7604(d). As the Supreme Court has noted, Congress intended that the federal courts "should recognize that in bringing legitimate actions under this section citizens would be performing a public service and in such instances the courts should award costs of litigation to such party." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686, n.8 (1983) (quoting S.Rep. No. 91–1196, 91st Cong., 2d Sess. 38 (1970)).

Plaintiffs hereby file their application for fees and costs.[2]  The amounts sought (through September 25, 2017) are $5,945,171.10 in attorneys' fees, $92,350 in expert witness fees, and $33,314.81 in taxable costs.  The total amount sought is thus $6,070,835.91.  Time spent preparing the attorneys' fee application is recoverable, *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995), and that time has been included here through September 25, 2017.  Plaintiffs also note that Exxon has appealed this Court's judgment.  If Plaintiffs prevail on appeal they will request additional compensation and costs for work performed after September 25, 2017.

## SUMMARY

After applying billing discretion, the lodestar of reasonable attorney hours multiplied by reasonable hourly rates is $5,404,701.  Application of the *Johnson* factors warrants a 10% increase to the lodestar, which brings the total amount for attorneys' fees to $5,945,171.10.  $92,350 in expert fees and $33,314.81 in taxable costs are also warranted.

## I.      THE GENERAL APPROACH TO FEE AWARDS.

This Court set out the approach to determining attorneys' fees in *Fleming v. Momenta Group LLC*, No. H-15-00075, 2016 WL 7742788, at *2 (S.D. Tex. April

---

[2] This application is timely.  *See* ECF No. 272 (application due 60 days following entry of Court's disposition of Exxon's motion to alter or amend judgment, which was entered on July 31, 2017) and No. 279 (extending deadline for submission of fee application to October 6, 2017).

27, 2016).  First, a "lodestar" is calculated by multiplying the reasonable number of hours expended on the litigation by the reasonable hourly rate of the attorneys. *Id.* (citing *Forbush v. J.C. Penney Co.,* 98 F.3d 817, 821 (5th Cir. 1996)).  "There is a strong presumption of the reasonableness of the lodestar amount."  *Id.* (citing *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 800 (5th Cir. 2006)).  Then, the court may adjust the lodestar based on the twelve factors established in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-719 (5th Cir. 1974). *Fleming*, 2016 WL 7742788, at *7.

While discovery would undoubtedly reveal that the rates sought here for Plaintiffs' attorneys are extremely reasonable in comparison to those of Exxon's attorneys, Plaintiffs acknowledge that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 441 U.S. 424, 437 (1983), and that a fee application is typically decided on the papers, *Vantage Trailers v. Beall Corp.*, No. 06-3008, 2008 WL 4093691, at *1, n.1 (S.D. Tex. August 28, 2008) (request for evidentiary hearing on fee motion denied).

## II.    PLAINTIFFS CALCULATE THE LODESTAR AS $5,404,701.

### A.    9,215 attorney hours in this case is reasonable, and is calculated in accordance with the settled principles for establishing compensable hours.

#### 1.    Plaintiffs submit proper documentation of hours.

"To establish the reasonable number of hours expended on the litigation by

the movant's attorney, 'courts customarily require the [movant] to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours.'" *Fleming*, 2016 WL 7742788, at *2 (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)).  Plaintiffs submit such documentation, as explained in declarations from attorneys who have worked on this case, describing each task and the date and the time spent by each attorney on the task.[3]

### 2. The total number of hours claimed is reasonable in light of the size, length, and complexity of the case.

Courts examine whether the total number of hours claimed is reasonable. *Fleming*, 2016 WL 7742788, at *2 (citing *LULAC v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997)).  The size, length, and degree of complexity of a case are relevant to such an examination.  *E.g.*, *In re Genetically Modified Rice Litigation*, 764 F.3d 864, 872-873 (8th Cir. 2014); *In re Enron Corp. Securities, Derivatives & ERISA Litigation*, 586 F. Supp. 2d 732, 772 & 788 (S.D. Tex. 2008). The Court is obviously in a position to assess these factors.  Plaintiffs respectfully suggest that this case is big, lengthy, and complex.  As Exxon itself stated in a recent filing, "This long-running case involves one of the most complex Clean Air

---

[3] *See* declarations and time records of attorneys Joshua R. Kratka, David A. Nicholas, Philip H. Hilder, Charles C. Caldart, William Graham, Heather Govern, and Kevin Budris, attached in the Appendix as Exhibits 5, 7, 14, 16, 18, 20, 21, 23, 25, 27, 29, 31 and 33.

Act citizen suits to be tried in federal court."  ECF No. 270, p. 2.[4]

*Size*:  The legal requirements of the claims and defenses raised meant that, at a minimum, evidence had to be presented on a number of multi-faceted issues, including:

- Standing, which involved three elements:  injury-in-fact, traceability, and redressability.

- Permit violations of five separate Title V operating permits, each of which incorporated a number of other TCEQ-issued permits.

- The state "affirmative defense" to penalties, which involved eleven different criteria applied to nearly 100 different events.

- Also relevant to penalty, the seven factors listed in the CAA at 42 U.S.C.  7413(e).

The District Court docket sheet has over 270 entries.  The trial took thirteen days and involved 1,148 exhibits that spanned thousands of pages.  25 witnesses testified at trial.  24 depositions were taken.  Exxon designated twelve experts (eight retained and four non-retained).  ECF No. 58.  Plaintiffs designated four retained experts.  Over 250,000 pages of documents were produced in discovery, mostly by Exxon.  Appendix Ex. 5, Declaration of David A. Nicholas in Support of Plaintiffs' Application For Attorneys' Fees, Expert Witness Fees, And Costs ("Nicholas Dec.") ¶ 32.  The large number of legal and factual issues relevant to

---

[4] The Exxon Defendants' Reply In Support Of Motion To Alter Or Amend The Judgment And Findings (ECF No. 270), p. 2.

appeal necessitated over-length appellate briefs by both parties.  To Plaintiffs'

knowledge, this case was the largest environmental citizen suit ever tried, and one

of the largest Clean Air Act cases ever tried.

*Length*:  This case has been ongoing for almost seven years since the

complaint was filed; pre-suit research, case preparation, and preparation of the

statutorily-required notice took place over an additional year.[5]

*Complexity*:  The fact that Exxon has had at least fifteen lawyers from three

law firms working on the case attests to the case's complexity and size.  Nicholas

Dec. ¶ 10, n.1.  Beck Redden lawyers were the trial and appellate specialists and

Winstead lawyers were the environmental law specialists.  One Beck Redden

attorney was quoted as saying the case involved "complicated scientific issues."

Appendix Ex. 9.  The sheer number of days of violation ultimately adjudicated by

the Court speaks to the breadth and depth of the issues involved.

In addition, Plaintiffs are submitting a declaration from attorney Eric

Schaeffer, a former director of U.S. EPA's Office of Civil Enforcement, who

attests that Clean Air Act enforcement cases require a significant effort from

plaintiffs' attorneys, and that the number of hours claimed by Plaintiffs here is

reasonable for a case of this magnitude.  Appendix Ex. 37.

---

[5] Time spent on developing the case before commencement is compensable.  *See Webb v. Bd. of Educ. Of Dyer County, Tenn.*, 471 U.S. 234, 243 (1985).

### 3.     Exxon's tenacious defense tactics increased Plaintiffs' attorneys' hours.

"[D]efendant's counsel cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.  [Cite omitted]."  *Serna v. Law Office of Joseph Onwuteaka, PC*, No. 4:11-CV-3034, 2014 WL 3749652, at *7 (S.D. Tex. July 29, 2014), *aff'd,* 614 F. App'x. 146, 157-159 (5th Cir. 2015); *accord Gay Officers Action League v. Commonwealth of Puerto Rico*, 247 F.3d 288, 299-300 (1st Cir. 2001).  A party's "scorched earth" strategy often requires the opponent's attorneys to devote additional hours to the case.  *Serna*, 2014 WL 3749652, at *7; *accord Gay Officers*, 247 F.3d at 298 (increase in fee award justified by "Stalingrad defense").

Here, Exxon fought Plaintiffs at every turn, seemingly for the sole purpose of trying to wear Plaintiffs down and get them to give up.  For instance:

- Exxon repeatedly asserted legal arguments and litigation positions after the Court expressly rejected such arguments or positions. Nicholas Dec. ¶ 21.

- Exxon continued to insist that post-Complaint violations and violations stemming from recordable emission events were not part of the case, even after providing discovery on those claims and after that argument was squarely rejected by the Court in its ruling on Exxon's motion for summary judgment – thus necessitating additional briefing and a hearing on the issue before Magistrate Judge Smith.  Nicholas Dec. ¶ 22.

- Exxon over-designated experts.  Nicholas Dec. ¶ 23.

- Exxon pleaded 28 defenses.  ECF Nos. 37 and 51-1.

- Exxon made blanket confidentiality designations covering the full reports of six of its expert witnesses and the entire deposition transcripts of its 30(b)(6) witnesses.  Nicholas Dec. ¶ 24.

- Exxon refused to agree to facts or propositions of law in the pre-trial order.  Nicholas Dec. ¶ 25.

- Exxon sought *en banc* rehearing by the Fifth Circuit of issues that did not meet the standard required for such extraordinary review. Nicholas Dec. ¶ 28.

- After the order on remand, Exxon filed an ill-conceived motion to alter the judgment.  Nicholas Dec. ¶ 29.

**4.  The specific hours claimed for each task are reasonable.**

Courts also examine "whether specific hours claimed were reasonably expended." *Fleming*, 2016 WL 7742788, at *2 (quoting *LULAC*, 119 F.3d at 1232).  To facilitate the Court's examination, Plaintiffs have categorized hours by type of work.  And rather than simply relying on broad categories such as "defendants' expert witnesses" or "trial," Plaintiffs have also created more specific subcategories to reflect more discrete tasks.  For example, instead of providing a total number of hours for "trial," a breakdown of hours for several dozen subcategories of work within that category (from "pre-trial conferences" to "prepare direct examinations of Plaintiff fact witnesses" to specific legal research and briefing tasks) is provided.  An explanation of the categories and subcategories is contained in Appendix Exhibit 14, the Declaration of Joshua R. Kratka in Support of Plaintiffs' Fee Application ("Kratka Dec."), at ¶¶ 12-19.

### 5.   Plaintiffs have exercised billing judgment.

A fee applicant must produce evidence of billing judgment, which is "documentation of the hours charged and of the hours written off as unproductive, excessive or redundant." *Saizan*, 448 F.3d at 799.  Plaintiffs have exercised billing judgment in this case.  In total, Plaintiffs have subtracted 3,505 hours, or 27.5%**,** of the 12,721 total hours actually expended.  The remaining 9,215 hours were necessary for litigation of this case.

A full explanation of Plaintiffs' reasoning in subtracting these hours is contained in the Kratka Declaration, at ¶¶ 22-42, and will not be repeated here.  To further assist the Court in assessing Plaintiffs' billing judgment, a detailed breakdown of the hours deducted and the resulting reductions in fees sought, both in total and for each individual attorney, for each of approximately 200 categories of work, is provided in Appendix Exhibit 1.  Plaintiffs are not seeking compensation for travel time, paralegal tasks (whether performed by paralegals or attorneys), or clerical tasks, and these hours are not included in the lodestar.  Nor are Plaintiffs seeking compensation for work relating only to Counts VI and VII, on which Plaintiffs did not prevail.[6]  Above all, work that may be considered

---

[6] Plaintiffs would be entitled to seek compensation for this work because Counts VI and VII "involved a common core of facts" with Counts I through V.  *Hensley*, 661 U.S. at 435 (where party did not prevail on all claims, hours for work on losing claims were properly part of the lodestar where facts and legal theories overlapped with prevailing claims).  However, not many attorney hours were devoted solely to

duplicative, unproductive or excessive, and time record entries that may be considered vague, are fully captured in the 27.5% reduction in total hours.

Plaintiffs note that billing for conferences among attorneys is proper. *Beauty Solutions Mfg. Corp. v. Ashland, Inc.,* 3:10–CV–2638, 2012 WL 4341814, at *4 (N.D. Tex. Aug. 29, 2012); *White v. Imperial Adjustment Corp.*, No. Civ. A. 99-3804, 2005 WL 1578810, at *14 (E.D. La. June 28, 2005).  Obviously, a case such as this could not be litigated through trial, appeal, and remand without Plaintiffs' lawyers conferring on strategy, legal analysis, and similar matters. Nevertheless, in a further exercise of billing judgment, Plaintiffs have significantly reduced the amount of attorney conference hours for which they seek compensation.  Kratka Dec. ¶ 23.

Plaintiffs also note that billing for two lawyers at depositions of major witnesses is allowed where customary, and what is customary can be evidenced by whether the opponent sends two lawyers.  *Trotter v. Columbia Sussex Corp.*, No. 08-0412, 2010 WL 383622, at *6 (S.D. Ala. Jan. 29, 2010).  Plaintiffs claim hours for two attorneys at deposition only where Exxon also had two lawyers present.

### B.    The Hourly Rates For Plaintiffs' Attorneys Are Reasonable.

As set forth by this Court:

---

these claims.  Kratka Dec. ¶ 35.  Work relating solely to Counts VI and VII is captured in the 27.5% reduction from the hours included in the lodestar.

> To establish the reasonable hourly rate for the movant's attorney, courts must consider the attorney's regular rate as well as the prevailing market rate, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)… Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896. Generally, affidavits of other attorneys practicing in the area will establish a reasonable hourly rate. *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

*Fleming*, 2016 WL 7742788, at *3. The hourly rates at the time the fee application is filed, as opposed to historical rates, are used. *In re Enron*, 586 F. Supp. 2d at 779 ("To compensate for delay in receiving fees, counsel have properly used their current billing rates. *Missouri v. Jenkins*, 491 U.S. [214] at 283-284 [1989]"). Higher rates are reasonable for specialized work, *see Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990), and courts have held that environmental law is considered a specialty for attorneys' fees purposes. *Miccosukee Tribe of Indians of Florida v. U.S.*, 2010 WL 9034623 at *5 (S.D. Fla. March 15, 2010), *recommendation adopted*, 2011 WL 9034624 (April 14, 2010), *aff'd* 498 F. App'x 889 (11th Cir. 2012); *League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Smith*, 491 F. Supp. 2d 980, 987-988 (D. Ore. 2007). Public interest and non-profit attorneys are entitled to rates charged by private attorneys. *Blum v. Stenson*, 465 U.S. at 894-895; *Chisholm v. Hood*, 90 Fed. Appx. 709 (5th Cir. 2004).

Plaintiffs request the following hourly rates for their attorneys:

| Attorney | Bar Admission Date | Hourly Rate |
|---|---|---|
| David A. Nicholas | 1985 | $650 |
| Joshua R. Kratka | 1985 | $650 |
| Philip H. Hilder | 1981 | $650 |
| Heather A. Govern | 2013 | $310 |
| William B. Graham | 2006 | $365 |
| Charles C. Caldart | 1974 | $650 |
| Kevin P. Budris | 2011 | $365 |

However, for legal research performed by senior lawyers, Plaintiffs' counsel employed a rate of a junior lawyer:  $310/hr.

To support these hourly rates, Plaintiffs submit declarations from each of the attorneys above (except that Mr. Hilder submits a declaration on both his and Mr. Graham's behalf) in the accompanying Appendix.  A declaration from Houston attorney Craig Smyser, who is familiar with rates charged in this jurisdiction, also supports the reasonableness of these rates.  Appendix Ex. 35.

Plaintiffs' hourly rates are comparable to those of Exxon's attorneys.  Jeff Civins, an Austin environmental attorney hired by Exxon to be an expert witness in this case (but not ultimately called to testify at trial), testified at his 2012 deposition that he had been practicing for 37 years, and that his standard rate back

in 2012 was $650/hr., which he considered reasonable because "I'm familiar with what the competitive market is, and I believe that's comparable to other attorneys with the number of years' experience that I have." Appendix Ex. 10. The rate of Russell Post, a Beck Redden lawyer who was the lead appellate lawyer on this case and has 20 years' experience (more than a decade less than the senior attorneys for Plaintiffs), is $525/hr., and the rates of Beck Redden attorneys with eight and four years' experience are $365/hr. and $310/hr., respectively. *See* Appendix Exs. 11-13 (excerpt of fee applications that include Beck Redden attorneys). *See also Preston Exploration Co., LP v. GSP, LLC*, No. H-08-3341, 2013 WL 3229678, at *5 (S.D. Tex. June 25, 2013) (Beck Redden attorney attests that $600/hr. was reasonable for Houston lawyer with 38 years of experience).

Case law in this district also supports the reasonableness of Plaintiffs' rates. Nine years ago, a court in this district found a $630/hr. average hourly rate for "partners," irrespective of their level of experience, justified. *In re Enron Corp.*, 586 F. Supp. 2d at 781, n.62.

## III.   APPLYING THE *JOHNSON* FACTORS, THE LODESTAR SHOULD BE INCREASED 10%.

The *Johnson* factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services; (4) the preclusion of other potential employment by the attorney; (5) the customary fee charged for similar services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitation imposed by the client or

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Fleming*, 2016 WL 7742788, at *4 (citing *Johnson*, 488 F.2d at 717–19).  Factors (4), (8) and (10) are likely not reflected in the lodestar amount.

For the reasons set forth below, Plaintiffs request a 10% upward adjustment from the lodestar based on the *Johnson* factors.  Mr. Smyser supports this requested upward adjustment.  Smyser Dec. ¶ 28.  A 10% upward adjustment would bring the amount of attorneys' fees to $5,945,171.10.

### 1.    Time and labor required.

As discussed above, this large and lengthy case has required an exceptional dedication of time and labor.

### 2.    The novelty and difficulty of the questions.

This is one of the few Clean Air Act citizen suits to be tried, and one of the few cases to address the legal framework governing emissions events.

### 3.    The skill required to perform the legal service.

This case has required highly specialized skills.  It involves the interpretation and application of a complex state/federal regulatory structure to the functions of a vast, integrated refinery and chemical plant complex, and has required consideration of highly technical engineering, public health, and economic issues.

### 4.   The preclusion of other potential employment by the attorney.

The amount of work this case engendered, over a substantial period of time, prevented Plaintiffs' counsel from developing and working on other potential environmental enforcement cases that Sierra Club and Environment Texas wanted to bring in Brazoria and Jefferson Counties.  Nicholas Dec. ¶ 19; Smyser Dec. ¶ 20.

### 5.   The customary fee for similar services in the relevant community.

Plaintiffs have submitted a declaration from Houston attorney Craig Smyser to attest that the hourly rates sought here are customary for this type of case.

### 6.   Whether the fee is fixed or contingent.

The Supreme Court has ruled that, generally, risk of nonpayment (*i.e.,* the contingent nature of a fee) is not a basis for enhancement of the lodestar in a CAA citizen suit, and thus this factor is not relevant.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728-731 (1987).

### 7.   Time limitation imposed by the client or circumstances.

This factor also is not relevant.

### 8.   The amount involved and the results obtained.

The $19,951,278 penalty assessed by the Court is, although modest in comparison to the statutory maximum penalty, extremely large in absolute terms

and an excellent result.  To Plaintiffs' knowledge, the penalty imposed in this case is the largest ever awarded in a citizen environmental enforcement suit, and one of the largest ever imposed in any environmental case against a single facility.  It is almost twenty times the amount TCEQ penalized Exxon for violations at the Baytown Complex over the period at issue in this case and, according to former EPA Director of Regulatory Enforcement Eric Schaeffer, "substantial enough to help deter similar violations by other petrochemical plants."  Schaeffer Dec. ¶ 15.

Moreover, Plaintiffs obtained a ruling that over 16,000 days of violation were actionable in this citizen suit.  This is also a significant result.  Exxon strenuously and persistently argued that its violations were not repeated (and thus not actionable) on the theory that each violation had a separate root cause.  If Exxon had prevailed on the legal argument that a common root cause is required for actionability, it would have greatly increased the burden faced by all citizen plaintiffs in enforcing the CAA and emission permits.[7]

---

[7] The Court did not issue a formal declaratory judgment because the Court concluded that such issuance was unnecessary in light of its ruling that Exxon's violations were actionable, and its detailed findings as to the number of actionable violations under each Count of the Complaint.  ECF No. 257-3, pp. 14-15.  As noted by the Fifth Circuit, "our affirmance of the broad conclusion that Exxon committed actionable violations of its permits diminishes any useful purpose that a declaratory judgment on that point might otherwise serve."  *Env't Tex, Citizen Lobby v. ExxonMobil Corp.*, 824 F.3d 507, 524 (5th Cir, 2016) (quotation marks omitted).

### 9.      The experience, reputation and ability of the attorneys.

Plaintiffs' principal trial attorneys, David Nicholas and Joshua Kratka, have

decades of experience litigating environment enforcement cases in federal court.

At the time this suit was commenced, the Court was already familiar with Philip

Hilder, an experienced trial lawyer.  And Charles Caldart, who has thirty years'

experience litigating environmental citizen suits in federal courts, has been

involved in legal analyses and the briefing throughout the case. The experience of

all the attorneys involved is set out in their declarations.

### 10.      The undesirability of the case.

Representation of the Plaintiffs in this case was a daunting prospect.  The

defendant is a company that for all practical purposes has unlimited resources to

fight citizen enforcement suits, and it has the predilection to take on such fights.

Also, Exxon is a major employer and a contributor to charitable causes in

the local community, and the case has been unpopular with the government of the

City of Baytown, which filed an amicus brief with the Fifth Circuit opposing

Plaintiffs' claims.  The State of Texas also opposed Plaintiffs:  during the

pendency of the case, at the request of Exxon, TCEQ agreed to enter into a consent

order, with terms favorable to Exxon, which Exxon has attempted to use to shield

itself from liability.  And TCEQ's former executive director, Mark Vickery, and its

former chief of enforcement, John Sadlier, agreed to testify as witnesses on

Exxon's behalf.

Moreover, Exxon itself felt no compunction against casting aspersions on Plaintiffs' counsel for having brought the case:  Exxon claimed that the case was "lawyer-driven" by "activist Boston lawyers [who] sought clients."  Trial Tr. 13-112:13-16; *see also* Trial Tr. 13-116:16-17 (in closing, Exxon counsel referred to "these Boston activist lawyers").[8]

As further evidence of the undesirability of this case:  two potential experts from Houston area academic institutions declined to work on this case because they were concerned that it would hurt their standing in those institutions. Nicholas Dec. ¶ 34.

### 11.    The nature and length of the professional relationship with the client.

Plaintiffs' lead counsel, Messrs. Nicholas and Kratka, have represented the Plaintiffs in environmental litigation for many years.  Nicholas Dec. ¶ 4; Kratka Dec. ¶ 5.

### 12.    Awards in similar cases.

Plaintiffs are unaware of any other environmental citizen suit of the size, complexity, and length of this one in which a final award of fees was made, and

---

[8] Exxon made this claim even knowing that Plaintiffs' counsel had represented these same plaintiffs in earlier CAA cases in this district, against Shell Oil Company and Chevron Phillips.

are thus unable to make fee comparisons within the environmental field.[9]  In a

patent case in this district, $17,890,557.38 was awarded to Exxon after a 10-day

trial (on liability only).  *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, No. H-89-

3203, 1993 WL 268680 (S.D. Tex. Feb. 17, 1993), *rev'd on other grounds*, 64 F.3d

1553 (Fed. Cir. 1995).

## IV.  PLAINTIFFS ARE ENTITLED TO $92,350 FOR EXPERT WITNESS FEES AND $33,314.81 IN TAXABLE COSTS.

Attached as Appendix Exhibit 2 is an itemization of expert witness fees and

costs for which Plaintiffs seek reimbursement, with supporting invoices.  Plaintiffs

seek reimbursement for $92,350 in fees and expenses associated with three

retained experts only:  Dr. Edward Brooks, economist Jonathan Shefftz, and

engineer Ranajit Sahu.  This relatively modest sum, for a case of this magnitude,

results from the reasonableness of the hourly rates negotiated by Plaintiffs' counsel

and their judicious use of the experts' time and travel.  *See* Kratka Dec. ¶¶ 43-45.

Attached as Appendix Exhibit 3 is a bill of costs, totaling $33,314.81.

Attached as Appendix Exhibit 4 is an itemization of those costs, with supporting

---

[9] In a CAA citizen suit case that involved only a three-day trial, $6.4 million ($5,1175,319.56 in attorneys' fees, $878,620.63 in expert fees, and $392,079.37 in costs) was initially awarded to a prevailing defendant.  *Sierra Club v. Energy Future Holdings Corp.*, No. 6:12-cv-108, ECF No. 305 (W.D. Tex. Aug. 29, 2014).  Before an appeal was heard, however, the fee award in that case was settled without any requirement of a payment.  Plaintiffs acknowledge that this award should not be used to support the request here – given the circumstances of that much smaller case, the award was excessive.

invoices.  Justification for the necessity of these expenditures for the litigation of

this case, and a description of other costs and expenses for which Plaintiffs are *not*

seeking reimbursement, is provided at Kratka Dec. ¶¶ 46-48.

This documentation supports Plaintiffs' request for $92,350 in expert fees

and $33,314.81 in taxable costs.

## <u>CONCLUSION</u>

Plaintiffs should be awarded attorneys' fees, expert witness fees, and other

costs of litigation in the total amount of $6,070,835.91.

Dated:  October 5, 2017

*/s/ Philip J. Hilder*                                    */s/ David A. Nicholas*
Philip J. Hilder                                         S.D. Tex. Bar No. 896677
State Bar No. 09620050                                   20 Whitney Road
Southern District of Texas Bar No. 2474                  Newton, Massachusetts  02460
Hilder & Associates, P.C.                                (617) 964-1548 (phone)
819 Lovett Blvd.                                         (617) 663-6233 (fax)
Houston, Texas  77006-3905                               */s/ Joshua R. Kratka*
(713) 655-9111 (phone)                                   Joshua R. Kratka
(713) 655-9112 (fax)                                     S.D. Tex. Bar No. 962922
ATTORNEY-IN-CHARGE                                       National Environmental Law Center
FOR PLAINTIFFS                                           294 Washington Street, Suite 500
                                                         Boston, Massachusetts  02108
Counsel for Plaintiffs                                   (617) 747-4333 (phone)
                                                         (617) 292-8057 (fax)

## CERTIFICATE OF SERVICE

On October 5, 2017, a true and correct copy of the foregoing was served through the Court's ECF system and in compliance with the Federal Rules of Civil Procedure on all counsel of record.

*/s/ Joshua R. Kratka*
Joshua R. Kratka