UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENVIRONMENT TEXAS | § | |
| CITIZEN LOBBY, INC. | § | |
| *and* SIERRA CLUB, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-cv-4969 |
| | § | |
| EXXON MOBIL CORPORATION, | § | |
| *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## THE EXXONMOBIL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES

TO THE HONORABLE JUDGE OF THIS COURT:

Defendants, Exxon Mobil Corporation, ExxonMobil Chemical Company, and ExxonMobil Refining and Supply Company ("the ExxonMobil Defendants") file this response to Plaintiffs' Application for Attorneys' Fees, Expert Witness Fees, and Costs (Doc. No. 280), and in support thereof respectfully would show the Court as follows:

### SUMMARY OF ARGUMENT

First, in light of the pending appeal in the case, the Court can and should defer addressing Plaintiffs' application at the present time.  Under applicable law, the Court can and should hold the application for fees and costs for consideration and decision until the appellate process is complete.

Second, if the Court does decide to address the application now, the Court should require Plaintiffs to provide additional detail with respect to their application for an award of attorneys' fees, or grant the ExxonMobil Defendants the opportunity to conduct further discovery of the Plaintiffs' attorneys' fee requests.

Third, even from the face of the limited information provided thus far to the ExxonMobil Defendants and to the Court, Plaintiffs' attorneys' fee and expert fee requests are excessive and unreasonable.  Given the excessive and unreasonable request, the Court can and should reject it in its entirety, or at minimum award far less than the six million dollars in fees that Plaintiffs request.  Any award of attorney and expert fees must be limited to those that can be tied to the limited success achieved by Plaintiffs, subject to appeal.

In their application, Plaintiffs ask for attorney and expert fees they claim to have incurred both before and over the lifetime of the case, regardless of whether those attorney or expert fees can be correlated to the limited success they have achieved.  Plaintiffs are not entitled to recover this nearly six million dollars in fees, if based only on the plain fact that they received no recovery at all on some of their theories that they advanced through pre-suit investigation, pleading, discovery, and trial.  Furthermore, with respect to those claims on which Plaintiffs did obtain a recovery on remand, that recovery was indisputably limited compared to the size and scope of the case as Plaintiffs framed it for pleadings, discovery, and trial.  Asking

for an award of six million dollars in fees incurred under these circumstances is unreasonable.

When they brought this case, Plaintiffs implicated not only events requiring a report to state regulators but thousands of potential deviations from permit conditions that were required to be "recorded."  Based on these inflated numbers, they sought almost one billion dollars in civil penalties, in addition to declaratory relief, an injunction, and the appointment of a special master to oversee the operations of the Baytown Complex.  Of course, the Court initially awarded no relief to the Plaintiffs following a three-week trial.  After re-considering the evidence in light of the Fifth Circuit panel decision, this Court reaffirmed that a special master was not warranted and the denial of Plaintiffs' requests for injunctive and declaratory relief.  However, the Court decided on remand to award an amount of penalties (approximately $19 million), which was a fraction of the penalties Plaintiffs sought in the case.  Thus, the only claim for relief on which Plaintiffs partially prevailed was a request for penalties, and the penalty award was *two percent* of the penalties they had initially sought when they brought the case and proceeded through discovery, or *three percent* of the 640 million dollars in penalties Plaintiffs demanded at trial.

As this Court will recall, Plaintiffs pled a "gotcha" case based on the Baytown Complex's own reports and records, including every conceivable claim and a request

for every conceivable remedy, regardless of its lack of underlying legal and factual merit.  In addition to raising claims over events that had resulted in actual regulatory action, Plaintiffs litigated claims over wisps of smoke that emanated from extension cords that shorted or from trash cans in an employee smoking area, and failures to conduct drain inspections.  Plaintiffs litigated claims over wildlife crawling and dropping into plant equipment.  In addition to seeking penalties, Plaintiffs sought injunctive relief requiring the ExxonMobil Defendants to spend hundreds of millions of dollars more in maintenance and inspection than the hundreds of millions already being spent.

This Court rejected almost the entirety of Plaintiffs' pled and discovered claims for relief.  Despite this outcome, Plaintiffs seek not only to recover six million dollars in fees, but also ask that this Court *enhance* those fees through an upward adjustment to their lodestar calculation.  Plaintiffs' unreasonable litigation positions and tactics through pleading, discovery, and trial led to the dramatically inflated fees they now seek.  Any fees awarded to Clean Air Act litigants should be based on the "reasonable" hours expended in the lawsuit.  Plaintiffs' unreasonable and overreaching approach to this case necessitated an arduous legal fight and a three-week trial as the ExxonMobil Defendants defended themselves against a proverbial "kitchen sink" of pled claims and relief.  Plaintiffs should not now be the

beneficiaries of their scattershot approach to this case by seeking to recover millions in fees caused by their undisciplined approach to the lawsuit.

Finally, even from the face of the material provided to the ExxonMobil Defendants and the Court, Plaintiffs' calculated lodestar is overreaching because (1) hours included in the lodestar calculation are excessive and improperly included and (2) their requested hourly rate is unreasonable in comparison to customary rates, the rates they charged for tasks in the case, as well as the rates charged by counsel for the ExxonMobil Defendants.

**ARGUMENT**

## I.     The Court Can and Should Properly Decline to Address the Plaintiffs' Request at the Present Time, in Light of the Pending Appeal.

As the Court is well aware, it initially entered a take-nothing judgment in favor of the ExxonMobil Defendants following trial.  The Court's take-nothing judgment was reversed and remanded for further consideration by a Fifth Circuit panel. Following entry of the Court's revised judgment, the ExxonMobil Defendants have now perfected an appeal.  Doc. No. 275.  Under the current briefing schedule, the parties should complete briefing on the appeal by April 2018.

As part of the appeal, the ExxonMobil Defendants will argue that Plaintiffs' civil penalty recovery should be vacated, or at minimum substantially reduced, from the amount set out in the Court's revised judgment.  As is set forth fully below, one of the prime considerations in setting a reasonable fee for plaintiffs in a Clean Air

Act citizen suit is the level of success that those plaintiffs achieve.  To date, Plaintiffs have achieved a level of success that is far below the shape and scope of the litigation they have pursued against the ExxonMobil Defendants, and even that limited recovery is subject to question on appeal.[1]

The Court would be well within its discretion to defer consideration of the attorneys' fee application until the process of evaluating Plaintiffs' recovery is complete.  As this Court recently held in *Rios v. Blackwelder*, No. CV H-13-3457, 2016 WL 8794467, at *1 (S.D. Tex. Apr. 27, 2016) (Atlas, J.):

> Nonetheless, for purposes of efficiency, the district court may "defer its ruling on the motion, or may deny the motion without prejudice, directing under [FED. R. CIV. P. 54(d)(2)(B)] a new period for filing after the appeal has been resolved." *Art Midwest, Inc. v. Clapper*, 2004 WL 743713, at *1 (N.D. Tex. Apr. 5, 2004) (quoting FED. R. CIV. P. 54 Advisory Committee Notes (1993 Amendments)), opinion adopted by District Court, 2004 WL 877613 (N.D. Tex. Apr. 20, 2004).  Where, as here, the claim for attorneys' fees may be "affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved." *Burnley v. City of San Antonio*, 470 F.3d 189, 198 (5th Cir. 2006) (quoting from Fed. R. Civ. P. 58 Advisory Committee Notes).

In the *Rios* case, the Court granted summary judgment for the Defendant.  *Id.*  Before the Plaintiff filed a notice of appeal, the Defendant filed a motion seeking attorneys'

---

[1] The Clean Air Act obviously allows a court to award "costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  42 U.S.C. § 7604(d).  On remand, the Court entered a finding that an attorneys' fee award to Plaintiffs would be made in this case, but left the issue of an amount for later determination.  Doc. No. 257.

fees. *Id.* While that motion was pending, the plaintiff filed a notice of appeal. *Id.* Judge Atlas deferred ruling on the pending attorneys' fee motion by denying it without prejudice until the appeal was resolved. *Id.*

Several other courts in the Fifth Circuit have likewise deferred ruling on a request for fees pending the conclusion of the appellate process. *See, e.g.*, *Celtic Marine Corp. v. James C. Justice Companies, Inc.*, No. CIV.A. 11-3005, 2014 WL 2215755, at *6 (E.D. La. May 28, 2014); *Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.*, No. 4:07-CV-194-A-V, 2013 WL 5464689, at *2 (N.D. Miss. Sept. 30, 2013); *Kirmer v. Goodyear Tire & Rubber Co.,* 2012 WL 2564955 (E.D. La. July 2, 2012); *Art Midwest, Inc. v. Clapper*, No. CIV.A.3:99CV2355-R, 2004 WL 877613, at *1 (N.D. Tex. Apr. 20, 2004).

Additionally, the Fifth Circuit has quoted approvingly from a Federal Rules advisory committee comment stating that a district court can defer a decision on the attorneys' fees motion until after the appeal is concluded. *Burnley v. City of San Antonio*, 470 F.3d 189, 198 (5th Cir. 2006); *see also Fluor Corp. v. Citadel Equity Fund, Ltd.*, 413 F. App'x 756, 757 (5th Cir. 2011) (affirming a district court's merits decision and noting that the district court deferred a ruling on attorneys' fees pending the appeal).

7

Furthermore, as indicated below, Plaintiffs include in their fee request time spent on the pending appeal. This only further bolsters the rationale for deferring consideration of Plaintiffs' fee application in the interests of judicial economy.[2]

## II. Plaintiffs Have Submitted Documentation in Support of Their Application, But Not the Documentation Necessary to Correlate Their Work to the Results Achieved.

As the United States Supreme Court has stated unequivocally:

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis to make an initial estimate of the value of a lawyer's services. *The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.*

*Hensley v. Eckerhart*, 103 S. Ct. 1933, 1939 (1983) (emphasis added).[3]

---

[2]Even if the revised judgment is affirmed on appeal, the Court would retain the ability to dispose of Plaintiffs' application in the manner it sees fit, including ordering the parties to exchange additional information and confer informally or through a special master or mediation process.

[3]The United States Supreme Court has interpreted the word "appropriate" in the Clean Air Act cost of litigation provision to mean that the party recovering attorneys' fees must at least "prevail in part" in the underlying litigation. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 689–90 (1983). An award of attorneys' fees under the Clean Air Act requires a two-step process, applying the *Hensley* reasoning. First, the court must calculate the lodestar amount, that is, it "must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Desert Rock Energy Co., LLC v. U.S. E.P.A.*, No. CIV.A. H-08-872, 2009 WL 3247312, at *3 (S.D. Tex. Sept. 29, 2009). Next, the court must either accept that amount or adjust it "upward or downward, depending on the circumstances of the case." *Id.* But this test assumes that the parties have evidence of reasonable and necessary attorneys' fees. Plaintiffs do not.

The Supreme Court has held that "district courts should exercise their equitable discretion in such cases to arrive at a reasonable fee award, *either* by attempting *to identify specific hours* that should be eliminated or by *simply reducing the award to account for the limited success* of the plaintiff." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 109 S. Ct. 1486, 1491-92 (1989) (emphasis added). As the Supreme Court indicated:

> Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, we indicated that "[t]he congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."

*Id*. (citing *Hensley*, 103 S. Ct. at 1940).

Such an exercise of discretion to either identify the specific hours that correlate to issues on which Plaintiffs succeeded or reduce the overall award to correlate it to Plaintiffs' success is mandated in this case, because it cannot be disputed that Plaintiffs' success, even as it currently stands pending appeal, is limited.

Plaintiffs have submitted what purport to be time records with their application.[4] However, those time records do not provide all of the detail necessary for the Court or the ExxonMobil Defendants to identify the specific hours that

---

[4]The fees sought by Plaintiffs are for seven lawyers: David Nicholas, Joshua Kratka, Philip Hilder, William Graham, Charles Caldart, Heather Govern, and Kevin Budris.

correlate to Plaintiffs' limited success in the penalty award currently achieved.  For example, the 9,215.13 hours of attorney time for which Plaintiffs' counsel seek recovery include dozens of entries for which the subject matter of the work is generically described as "potential claims," "theories of liability," "organize files," "analysis of possible remedies," "strategy," "document management and review," "case planning," "work plan for litigation team," "assigning tasks and to-do list," and the like.  *E.g.,* App. at Ex. 7 at 2–5, 8, 10, 16–20, 23–27, 32–35; Ex. 16 at 2, 5, 15, 18, 19, 30, 34, 48, 51, 53; Affidavit of Eric J.R. Nichols (attached as Exhibit A to this response) [hereinafter Nichols Affidavit].

Such nondescript entries do not allow the Court or the ExxonMobil Defendants to correlate time worked to the limited success achieved by Plaintiffs, which is the touchstone for recovery of fees when as here plaintiffs prevailed in a limited fashion.  *Texas State Teachers Ass'n*, 109 S. Ct. at 1491–92; *Hensley*, 103 S. Ct. at 1940.  For example, did the "potential claims," "theories of liability, "work plan," etc. include time spent on non-meritorious claims, such as claims barred by the fact that they were already covered by prior consent decrees or claims over events that involved no emissions whatsoever?

This deficiency in Plaintiffs' fee records, in tying work to success, was not made up for through any other proof, such as attorney affidavits or expert testimony.  In fact, the affidavits from Plaintiffs' counsel do not add anything of substance to

the multiple generic time entries, and in fact attest only generally that "the vast majority" of the time entries are "very detailed."  App. at Ex. 5 ¶ 6 (declaration of David Nicholas).  As indicated above, the ExxonMobil Defendants do not agree that the "vast majority" of the time entries are detailed enough to conduct the mandated review to correlate work with success, but even Plaintiffs themselves acknowledge the lack of specificity in some of their entries.  Their protestations that a "level of specificity" was not achievable (*id.* ¶ 7) rings hollow.  After all, it is Plaintiffs that seek to recover fees and bear the corresponding burden of proof.  Such proof must include tying specific work they did to success they achieved.

Plaintiffs' deficiencies in specificity have not been cured through any proffer of expert testimony.  The Plaintiffs failed to designate any attorneys' fees experts in the case, and offer only an entirely conclusory affidavit from an attorney who was never designated as an expert in the case to offer opinions.[5]

The failures in Plaintiffs' proof have prejudiced the ExxonMobil Defendants, because they have no opportunity to fully correlate hours claimed by Plaintiffs'

---

[5]Although a federal court has discretion to consider untimely designated opinions on attorneys' fees, this sort of failure to timely designate attorneys' fees experts would prohibit an attorneys' fees award under Texas law.  *See 15625 Ft. Bend Ltd. v. Sentry Select Ins. Co.*, 991 F. Supp. 2d 932, 946–47 (S.D. Tex. 2014) ("For a party to recover attorney's fees it must produce supporting expert testimony.").  Thus, "the failure to properly and timely designate an expert witness on a fee award bars recovery of such fees under Texas law." *Id.*  Furthermore, under either Texas or federal law, conclusory affidavits are of no evidentiary value. *E.g., Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013); *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 542 F.2d 255, 257 (5th Cir. 1976); *Hopson v. E-Sys., Inc.*, No. CIV.A.3:95-CV-0535-P, 1997 WL 457511, at *4 (N.D. Tex. Aug. 4, 1997).

counsel with the limited success achieved by Plaintiffs. As discussed below, the Court can and should address the Plaintiffs' failure to properly establish the correlation between fees and success by rejecting the request or reducing fee recovery from the lodestar amount Plaintiffs request. However, in the event the Court determines to consider the fee request, it can only do so if Plaintiffs engage in the correlation exercise that is essential in a partial-success case. Accordingly, the ExxonMobil Defendants request that the Court either (1) order that Plaintiffs re-file their application to correlate the work for which they seek attorneys' fee and expert recovery with their limited success, or (2) permit discovery into the hours actually incurred by Plaintiffs with respect to the relief Plaintiffs have obtained.

**III.   Even on Its Face, Plaintiffs' Lodestar Calculation Is Excessive and Unreasonable.**

Even if the Court were to engage in a review of Plaintiffs' attorneys' and expert fee application now, without requiring Plaintiffs to provide additional detail on their fee bills or providing an opportunity for the ExxonMobil Defendants to conduct discovery, it is undisputed that entry of an attorneys' fee award requires a two-step process. First, a court must calculate a lodestar amount. That is, a court "must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Desert Rock Energy Co., LLC v. U.S. E.P.A.*, No. CIV.A. H-08-872, 2009 WL 3247312, at *3 (S.D. Tex. Sept. 29,

12

2009).  Next, the court either accepts that amount or adjusts it "upward or downward, depending on the circumstances of the case."  *Id.*

On its face, Plaintiffs' proposed lodestar amount should be reduced significantly because neither the hours nor the hourly rate included in the lodestar calculation are reasonable.

### A.    *Courts guard against excessive statutory fee awards*.

A court has a vital role to play in preventing statutory fee-shifting from encouraging excessive attorneys' fees in the pursuit of non-meritorious claims.  As the Third Circuit has noted, "[t]he lawyer must not abandon self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be statutorily shifted to the losing party."  *Hall v. Borough of Roselle*, 747 F.2d 838, 841 (3d Cir. 1984).

As the Supreme Court stated in *Hensley*:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 103 S. Ct. at 1939–40.

13

Similarly, the First Circuit has warned that fee-shifting statutes do not exist "to serve as full employment or continuing education programs for lawyers and paralegals." *Lipsett v. Blanco*, 975 F.2d 934, 938–39 (1st Cir. 1992).  Several federal district courts similarly have warned against lawyers "abandon[ing] self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be statutorily shifted to the losing party." *Coop. Fin. Ass'n, Inc. v. Garst*, 927 F. Supp. 1179, 1188 (N.D. Iowa 1996); *see also United Nuclear Corp. v. Cannon*, 564 F. Supp. 581, 589–90 (D.R.I. 1983).  These concerns are heightened "[w]hen a non-legal organization or other layman profits from the rendering of legal services." *Rodriguez v. City of New York*, 721 F. Supp. 2d 148, 152–54 (E.D.N.Y. 2010).[6]

An abandonment of self-restraint is apparent from Plaintiffs' time records. For example:

- One lawyer accounts for over 60 hours of time (which Plaintiffs seek to charge at $650 per hour) preparing to examine a single witness at trial.  App. Ex. 7 at 37–41.

---

[6]Overcompensating lawyers harms both the party paying the excessive fees and the judicial system as a whole by incentivizing lawyers to over-plead and over-litigate their case to increase their fee request to the opposing party.  *See, e.g.*, *In re Vioxx Prod. Liab. Litig.*, 574 F. Supp. 2d 606, 610–11 (E.D. La. 2008) ("Overcompensating attorneys, however, would also be harmful, as it would encourage frivolous lawsuits and result in unfair recovery for injured litigants.").

- As further discussed below, Plaintiffs seek to bill the ExxonMobil Defendants for over 32 hours of time spent preparing their press releases, and responding to press inquiries.

- As further discussed below, Plaintiffs seek to bill the ExxonMobil Defendants for multiple hours of time that from the face of the records is unrelated to any of the work done on the case, including time spent in attending EPA meetings; for work done with respect to EPA or litigation matters not concerning any of the ExxonMobil Defendants; and for reviewing information about the Baytown Complex after the record in the case was closed and the case was on appeal.

### B.    *Plaintiffs requested hourly rate is excessive.*

Plaintiffs' fee request is also excessive because their proposed rate of $650 per hour is unreasonable both in comparison to the rate the ExxonMobil Defendants paid to the counsel who served on their trial team, and compared to the median hourly rate for Houston lawyers.

The ExxonMobil Defendants paid an average or blended hourly rate of approximately $353 for the lawyers who served on the defendants' trial team in this case.   Nichols Affidavit ¶ 8.   Plaintiffs have themselves suggested that the ExxonMobil Defendants' hourly rate should be a significant factor for the Court to consider in setting a reasonable hourly rate.  App. at 3, 10, 12–13.  The importance

that Plaintiffs put on this factor is further demonstrated by the four exhibits that Plaintiffs attach to their motion demonstrating the fees charged by counsel for ExxonMobil in other, unrelated cases. *See* App. Ex. 10–13.

The Plaintiffs' reliance on fees charged by counsel for ExxonMobil in other, unrelated cases is misplaced for several reasons. First, as a matter of law, the rates charged by a law firm's customary schedule is not dispositive of a reasonable hourly rate. *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 19 (1st Cir. 1988) ("A law firm's customary schedule of charges, though entitled to consideration, is not dispositive of the issue: a private client might well be willing to buy a Stradavarius when a Guadagnini would plainly do, or to pay top dollar for either when the same instrument could be purchased less expensively elsewhere.").

Second, this case involves Plaintiffs seeking to bill a $650/hour rate for such tasks as amassing and correlating data related to the alleged violations. For example, the Plaintiffs seek hundreds of hours in attorneys' fees for time spent engaging in "factual discovery" and "factual research." App. at Ex. 1. It is undisputed that most of these hours reflect obtaining the Baytown Complex's reports and records and re-assembling the data into charts. This type of work was hardly legally sophisticated. By contrast, the motions practice, trial strategy and presentation, and other advocacy stages of the other litigation, which was governed by "little precedent," could warrant a higher rate reflective of sophisticated counsel (but not a

$650/hour rate).  App. at Ex. 12 at 3.  Plaintiffs have failed to segregate between the sophistication required within the thousands of hours for which they seek recovery.

Third, the Plaintiffs take the *highest hourly rate* reported as having been charged in these other unrelated cases and then seek to apply that rate across nearly 7,500 hours of time they claim to have spent on this litigation.  Nichols Affidavit ¶ 7, 9.  That analysis is patently unreasonable.

Plaintiffs themselves disclose a more appropriate rate for the work at issue, and one that is in the range actually charged by the lawyers who served on the ExxonMobil Defendants' trial team in this case.  In the time records of various lawyers, including the lawyers for whom Plaintiffs seek a fee award of $650/hour for most tasks, various time entries include a rate of $310/hour for tasks associated with "legal research."  App. at Ex. 7 p. 47–55.  Plaintiffs fail to explain or justify how a higher rate than this $310/hour rate should be charged on other tasks, much less the $650/hour rate requested.

In short, Plaintiffs' $650 hourly rate, which they seek to apply to 7,500 hours of the time entries at issue in their application, is almost double what the ExxonMobil Defendants paid its trial team in this case.[7]  The rate that the ExxonMobil Defendants

---

[7]Of course, Plaintiffs have not established that they have been billed for any attorney hours at any rate, much less paid any of the seven lawyers any attorneys' fees.  Four of the seven lawyers at issue are on staff at the National Environmental Law Center, and the three others are or appear to be working on contingent fee arrangements.  App. Ex. 5 at 16; App. Ex. 18 (failing to identify that time records show hours actually billed to the clients).

paid its trial team and the lower rates that Plaintiffs' lawyers themselves used for various tasks in this case is the most appropriate measure of attorneys' fees for this litigation, considering the specific factual and legal issues involved. This discrepancy alone demonstrates the unreasonableness of Plaintiffs' requested hourly rate.

Second, Plaintiffs' requested hourly rate is substantially higher than the median hourly rates charged by local lawyers. For example, the median appellate attorneys' hourly rate is about $300 in Texas and $325 in Houston. STATE BAR OF TEXAS, DEPARTMENT OF RESEARCH & ANALYSIS, 2015 HOURLY FACT SHEET 6, 9 (2016).[8] Similarly, the median hourly rate for an environmental attorney is about $300 in Texas and $388 in Houston. *Id.* at 6, 10. These average rates corroborate the reasonableness of the rates charged by the ExxonMobil Defendants' trial team and, again, are roughly half the rates Plaintiffs seek in their application.

For all of the foregoing reasons, Plaintiffs' proposed top-end hourly rate of $650, which they seek to apply to nearly 7,500 of the attorney hours claimed, is plainly too high and should be reduced. A top-end rate of $353, which represents the blended rate paid by the ExxonMobil Defendants to their trial team, is a more than reasonable rate to apply across such a broad spectrum of hours and activities.

---

[8]This research is available at:
https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Econonomic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182.

A blended hourly rate of more than $388, the highest median rate for the appropriate legal specializations, would be excessive.

### C. The number of hours worked is excessive and unreasonable and should be reduced for work on meritless efforts.

The Court should reduce any attorneys' fee award after taking the several losing stages of the lawsuit into account. As the Court will recall, Plaintiffs were completely unsuccessful in presenting many unmeritorious theories and claims. Those meritless tasks include the following:

- Bringing claims concerning claimed violations that were covered by prior consent decrees with the federal government, *notwithstanding Plaintiffs' counsel having reviewed those decrees before filing the lawsuit*. App. Ex. 7 at 2. These claims were properly disposed of on summary judgment, Doc. No. 135, and never should have been brought.

- The Court found that the work of Keith Bowers, one of Plaintiff's experts, was unreliable. Although Plaintiffs have not included Bowers' fees in their request, Plaintiffs nonetheless are seeking to recover the $72,617 (or 112.2 hours) in attorneys' fees associated with working with and preparing Bowers, his report, and his testimony. App. Ex. 1 at 3–4.

- Plaintiffs unreasonably multiplied the costs of this litigation by seeking to raise (and unsuccessfully moving for summary judgment, and seeking impose the maximum amount of civil penalties) on every reportable and recordable event, no matter how trivial, and without regard to whether the event involved any release of pollutants. The Court will recall the many examples of, for instance:

the smoldering wood:

| 136 | Hydroformer 4 | Emissions to Atmosphere due to HF 4 Smoldering Plywood | Put white fire blankets on and wet them down to stop emissions in less than one minute. | 11/14/05 | 19:30 | 0.0 Nox | | 0.10 | 0.00 1 |
| 137 | | | | | | | CO (Carbon Monoxide) | 0.10 | 0.00 1 |

PX 1B at 3;

| | | Emissions to Atmosphere due to Smoldering Board | Combustion Incident was Extinguished | 01/11/06 | 2:00 | 0.1 | VOC (Unspeciated) | 1.33 | 0.00 |
|---|---|---|---|---|---|---|---|---|---|
| 279 | Mechanical | | | | | | | | |
| 280 | | | | | | | NO | 0.01 | 0.00 |
| 281 | | | | | | | NO2 | 0.00 | 0.00 |
| 282 | | | | | | | SO2 | 0.00 | 0.00 |
| 283 | | | | | | | CO (Carbon Monoxide) | 1.47 | 0.00 |
| 284 | | | | | | | PM | 0.20 | 0.00 |

*id*. at 6;

      the cigarette butt left in the ash can:

| | | Emissions to Atmosphere due to Fire in butt can between PACA and TACB trailers | Water used to douse the smoldering materials in the butt can. | 07/18/06 | 12:00 | 0.1 | NO | 0.00 | 0.00 | |
|---|---|---|---|---|---|---|---|---|---|---|
| 916 | SITE | | | | | | | | | |
| 917 | | | | | | | PM | 0.00 | 0.00 | |
| 918 | | | | | | | VOC (Unspeciated) | 0.00 | 0.00 | |
| 919 | | | | | | | CO (Carbon Monoxide) | 0.00 | 0.00 | |
| 920 | | | | | | | SO2 | 0.00 | 0.00 | |

*id*. at 20;

| | | Unplanned Combustion Incident due to Cigarette Dispense Bucket Smoldering | Combustion Incident was extinguished in less than one minute. Poured water in bucket. | 10/26/11 | 10:10 | 0.0 | CO (Carbon Monoxide) | 0.01 | 0.00 |
|---|---|---|---|---|---|---|---|---|---|
| 2432 | Offsites | | | | | | | | |
| 2433 | | | | | | | Nox | 0.01 | 0.00 |

PX 2D at 74;

      and the shorted electrical socket:

| | | Emissions to Atmosphere due to small fire at the receptacle from extension cord | Put out fire with extinguisher | 06/03/06 | 10:00 | 0.0 | CO (Carbon Monoxide) | 0.01 | 0.00 |
|---|---|---|---|---|---|---|---|---|---|
| 800 | Mechanical | | | | | | | | |
| 801 | | | | | | | Nox | 0.01 | 0.00 |

PX 1B at 18.

      These are but a few examples of the very minor recordable events that resulted in no or *de minimis* release of air contaminants but for which Plaintiffs nevertheless pressed for the maximum civil penalties. Plaintiffs' approach further caused fees and expenses to be incurred for events that were completely unavoidable. The Court will recall two examples of this that it cited in its original findings and conclusions:

[224] In particular, the Court finds Bowers's testimony regarding the Events and Deviations having "common causes" is neither credible nor persuasive. For example, the Events and Deviations that Bowers categorizes as having the same common cause of "power supply failures" include the following: moisture got into the connections of improperly installed lightening arresters, causing them to short out; a squirrel bypassed animal traps, causing some electrical equipment to short circuit; and a hawk dropped a snake on top of Substation One, causing an electrical power disruption. *Defendants' Exhibits* 1020C, 1020I–O; *Trial Transcript* at 10-244:17 to 10-253:17. Categorizing such varied events together does not prove the events had a common cause, resulted from a recurring pattern, or were preventable.

Doc. No. 225-1, at 60.

- An event caused by a squirrel electrocuting itself in a transformer unit;

- An event caused by a snake being dropped by a hawk onto electrical lines.

Moreover, Plaintiffs alleged a count, and initially pressed for the maximum possible penalty, for deviations from an air permit requirement that resulted in no pollutant emissions. For example, the ExxonMobil Defendants recorded as deviations:

- failure to maintain a record of a drain inspection;

- late submission of a report of an engine's hours of operation;

- failure to perform a quarterly engine test due to engine malfunction, the corrective action for which was testing the engine upon repair and startup.

Plaintiffs' insistence upon such an undisciplined, shotgun approach to prosecuting their claims inevitably caused fees to be increased to both parties.[9] Particularly considering this broad "gotcha" approach, Plaintiffs should not be heard to complain, as they do, that the ExxonMobil Defendants mounted a vigorous defense. The ExxonMobil Defendants repeatedly encouraged Plaintiffs to focus their case and take a more disciplined approach to litigating their claims, but Plaintiffs refused. Instead, they persevered with an unfocused, undisciplined, all-or-nothing approach, seeking the maximum civil penalty for every single event, reportable or recordable, without regard to its magnitude or triviality. Plaintiffs (along with their counsel) drove the costs of this litigation, and their lawyers should not be rewarded now for such an undisciplined and scattershot approach.

Although it is not possible to determine with any precision based on information currently available the number of attorney hours billed in these fruitless and questionable efforts, the lodestar should be discounted to take into consideration

---

[9]It is with a great deal of irony that Plaintiffs suggest that "Exxon adopted a 'scorched earth' policy that eschewed cooperating with Plaintiffs to narrow the facts and issues to be tried." App. Ex. 5 ¶ 20. As the Court is well aware, it was the Plaintiffs who doggedly refused to focus this case, from the get-go forward, on events that had even potential significance in terms of plant operations, much less environmental impact. The ExxonMobil Defendants repeatedly sought to narrow the facts and issues to be tried, but Plaintiffs refused to abandon voluntarily (until the Court ruled against them) any part of their "gotcha" case—which, at its core, sought maximum penalties and a panoply of injunctive relief for any potential deviation from permit conditions reflected in mandatory self-reporting or recordkeeping.

these overly aggressive and pointless exercises—and that discount should be significant.

### D.    *Plaintiffs' requested hours are facially improper*.

Moreover, Plaintiffs seek reimbursement for attorney work that is not recoverable.  The limited information and lack of specificity provided concerning the fee application, as indicated above, does not allow the ExxonMobil Defendants or the Court to engage in a line-item examination of each of Plaintiffs' improper attorneys' fee requests.  But even on their face, there are multiple categories of requests for fees that are plainly improper, including but not limited to the following:

First, Plaintiffs request at least $49,225 (based on 75.7 hours) for drafting the indisputably overbroad pleadings that included not only events that resulted in reportable emissions, but also recordable events that did not as well as events that were the subject of prior consent decrees with the federal government.  App. Ex. 1 at 2.

Second, Plaintiffs request at least $88,703 (based on 140.9 hours) for drafting and arguing summary judgment motions, which unsuccessfully sought summary judgment on all of their overbroad claims.  App. Ex. 1 at 6.  To make the request even more unreasonable, Plaintiffs include time spent after the trial court's ruling considering how to re-file their unmeritorious summary judgment motion.  App. Ex. 7 at 33.

23

Third, Plaintiffs request at least $78,561 (based on 120.5 hours) for their counsel's efforts to line up standing witnesses for purported support of claims they could only bring through members with standing, after they had engaged Plaintiffs to bring these claims. App. Ex. 7, 16. Such efforts at solicitation and generation of claims should not be rewarded with an award of fees.

Fourth, Plaintiffs request at least $19,663 (based on 30.3 hours) for efforts to "line up" atmospheric chemistry and air dispersion modelling experts, when as the Court is well aware Plaintiffs fully failed (for obvious reasons, given the lack of impact of the emissions at issue on the surrounding communities and environment) to put on *any such evidence*. App. Exs. 7, 16.[10]

Fifth, as noted above, even though Plaintiffs (for good reason) do not seek to recover fees incurred through the expert witness Keith Bowers, Plaintiffs nonetheless are seeking to recover at least $86,686.75 (or 134.8 hours) in attorneys' fees associated with working with and preparing Bowers, his report, and his testimony. App. Ex. 1 at 3–4.

Sixth, Plaintiffs request at least $149,843.50 (based on 231.1hours) for work on developing, designating, and presenting at deposition and trial two experts, Edward Brooks and Ranajit Sahu, whose opinions and testimony played no part in

---

[10]In fact, Plaintiffs redact the names of these unused experts from their fee request.

the limited success achieved by Plaintiffs.  Doc. 225 at 68–72, ¶¶ 47–48, n. 247; Doc. 257 at 91–92, n. 256.

Seventh, Plaintiffs request at least $19,500 (based on 24.6 hours) for work on developing and designating Sierra Club director Neil Carman as an expert, when Plaintiffs fully disclaimed Dr. Carman as an expert at trial.  Trial. Tr. 2-133:23–2-135:3; 2-136:22–2-137:16; 2-139:20–2-140:9.

Eighth, Plaintiffs request at least $20,788 for attorneys' fees (totaling 32.8 hours) for reviewing its clients' press materials and responding to press inquiries. App. Ex. 1 at 9 (Doc. No. 280-3).  Time spent by an attorney regarding media inquiries and press releases is not recoverable as attorneys' fees.  *See Cushing v. McKee*, 853 F. Supp. 2d 163, 174 (D. Me. 2012) ("Reported federal cases are unanimous in denying awards of attorneys' fees for media-related time.").  As the Court is aware, Plaintiffs issued multiple press releases deriding the Defendants and sometimes the judicial process.  *See, e.g.*, Ex. B.  Plaintiffs should not recover attorneys' fees incurred in communicating with the press about their case and the court process.

Ninth, despite the pending appeal having not yet occurred, and despite Plaintiffs reserving the right to seek appellate attorneys' fees in the second appeal, Plaintiffs seek at least $22,222 for "miscellaneous" work (totaling 43.2 hours) relating to the second appeal.  App. Ex. 1 at 9.  That request is improper because it

is unknown whether Plaintiffs will prevail on the second appeal (and is in fact another reason to defer consideration of Plaintiffs' application, as set forth above). Any award for attorneys' fees for the second appeal is not properly before the Court.

Tenth, Plaintiffs seek, in multiple entries, time spent for work that is not specific to this case. For example, Plaintiffs seek $1,300 for two hours for advising Carman and Metzger for "use of Exxon case in testimony on new refinery regs." App. Ex. 16 at 50. As another example, Plaintiffs seek $1,680 for 2.6 hours of time spent in an "EPA meeting on SIP disapproval issues, replacement of flex permits," and reviewing "info on upcoming flare presentation by EPA." App. Ex. 7 at 6. As another example, Plaintiffs seek $1,300 for two hours of time spent by lawyers discussing "whether to sue for failure to have a permit, given impending EPA disapproval of flex permit program." *Id*. at 6. As another example, Plaintiffs seek over $2,000 for 4.3 hours of work spent reviewing "BP temp injunction," reviewing "Sierra Club brief in Luminant case, re aff defense issues," reading "final order in Big Brown Luminant," and analyzing "Harris County suit over propylene releases." App. Ex. 16 at 2, 9, 11; App. Ex. 29 at 9. Such time for separate lobbying for regulations, discussion about claims never pursued, and time spent reviewing documentation from other cases should not be recovered as reasonable attorney time spent in this litigation.

26

### E.    *The lodestar would need to be recalculated.*

It is only once all of the time not traceable to Plaintiffs' limited success could be subtracted that the lodestar calculation could be made.  The above-listed nine issues are not exhaustive, but are issues that are apparent from the face of Plaintiffs' application.  Just taking these non-exhaustive examples of improperly included categories of hours into account, as an example the lodestar hours would be recalculated as follows:

| | |
|---|---:|
| Original number of hours sought by Plaintiffs. | 9,215.3 |
| | |
| Subtract hours associated with drafting overly broad pleadings. | 75.7 |
| Subtract hours associated with summary-judgment motions. | 140.9 |
| Subtract hours associated with lining up standing witnesses. | 120.5 |
| Subtract hours associated with lining up atmospheric chemistry and air dispersion modelling experts. | 30.3 |
| Subtract hours associated with finding, preparing, and presenting K. Bowers. | 134.8 |
| Subtract hours associated with finding, preparing, and presenting E. Brooks. | 143.5 |
| Subtract hours associated with finding, preparing, and presenting R. Sahu. | 87.6 |
| Subtract hours associated with finding, preparing, and presenting N. Carman. | 24.6 |

| | |
|---|---|
| Subtract hours associated with review of press releases. | 32.8 |
| Subtract hours for work relating to the second, pending appeal. | 43.2 |
| Subtract hours for work unrelated to this litigation. | 10.9 |
| Recalculated hours expended. | 8,370.5 |

Again, this recalculation of hours is only with respect to issues on Plaintiffs'
application that are immediately apparent from the face of entries which often do not
allow identification of specific work, and any proper lodestar calculation could only
be made following further specification in Plaintiffs' application or discovery.

**IV.    The Court should further reduce the lodestar to reflect Plaintiffs'
relative lack of success.**

A lodestar calculation can and should be adjusted downward to reflect a
plaintiff's level of success in the case.  *E.g.*, *Pub. Interest Research Grp. of New
Jersey, Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995) ("It is, however, essential
to calculate the lodestar before considering adjustments.  Only after the lodestar is
determined does the district court have discretion to consider results obtained and,
in doing so, to exclude some or all of the time spent on unsuccessful claims.").

Here, Plaintiffs recovered less than two percent of the amount they originally
sought when they filed this action, and less than three percent of what they requested
at the close of trial.  Plaintiffs should not recover the full amount of the attorneys'
fees they seek when their success rate was so low.  Under these circumstances, the
fee award should not be *increased* from the properly calculated lodestar, as Plaintiffs

suggest.  Rather, the Court should reduce Plaintiffs' requested attorneys' fee award in light of Plaintiffs' limited success.

The Supreme Court has "emphasize[d] that the inquiry does not end with a finding that the plaintiff obtained significant relief." *Hensley*, 103 S. Ct. at 1943. Instead, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.*  Indeed, the plaintiff's amount of success is "crucial" to determining the appropriate attorneys' fee award. *Id.* at 440.  The Fifth Circuit has held that a court must "give primary consideration to the amount of damages awarded as compared to the amount sought." *Combs v. City of Huntington, Texas*, 829 F.3d 388, 395–96 (5th Cir. 2016) ("In *Perdue*, the Court emphasized that it is enhancements that must be rare because, instead of merely guaranteeing adequate representation, they can result in a windfall to attorneys.").

Following the Supreme Court's guidance, "[c]ourts routinely reduce the fee request by a percentage representing plaintiff's perceived success." *Mazloum v. D.C.*, 654 F. Supp. 2d 1, 4–5 (D.D.C. 2009).  And, despite not being the only factor, "the perception of value placed on a case by plaintiff's counsel is a pertinent factor in assessing success . . . ." *Saleh v. Moore*, 95 F. Supp. 2d 555, 575 (E.D. Va. 2000), *aff'd sub nom. Saleh v. Upadhyay*, 11 F. App'x 241 (4th Cir. 2001).  Thus, "a district

court must consider any disparity between the amount of damages sought and the amount of damages awarded." *Combs*, 829 F.3d at 395–96.

For example, when a plaintiff recovered "slightly more than 1% of the amount he was seeking," the court only awarded attorneys' fees "represent[ing] approximately 2% of the attorney's fees that the court would have awarded had the plaintiff succeeded on all of his claims." *Dunlap-McCuller v. Riese Org.*, No. 87 CIV. 3961 (JSM), 1991 WL 280706, at *2 (S.D.N.Y. Dec. 20, 1991). Similarly, other courts have significantly reduced the lodestar rate when the plaintiff was only partially successful. *Chem. Mfrs. Ass'n v. U.S.E.P.A.*, 885 F.2d 1276, 1283 (5th Cir. 1989) (reducing the lodestar on some claims by 75% when the Plaintiff was only 25% successful on those claims); *Friends of the Earth v. Eastman Kodak Co.*, 834 F.2d 295, 298 (2d Cir. 1987) (affirming a district court's decision reducing the lodestar by 70% when the Plaintiff only received $49,000 of the $12 million it originally sought).

The Court should follow this Supreme Court and Fifth Circuit guidance in making any award of attorneys' fees proportional to the actual recovery obtained. Plaintiffs originally sought one billion dollars in civil penalties in this case. Doc. No. 164, at 7–10. At the close of trial, Plaintiffs asked the court to award $640 million in civil penalties. Trial Tr. 13-22:15–18. In its revised findings and conclusions, the Court awarded $19 million in civil penalties—roughly two percent

of the damages pled and three percent of the amount requested at trial.  The Court can and should take this discrepancy between relief sought and relief awarded into account.

Moreover, in addition to damages, Plaintiffs sought declaratory relief, injunctive relief, and the appointment of a special master. The Court rejected each of these requests, and that rejection was upheld on appeal.  Plaintiffs, predictably, do not discuss their success "compared to the amount sought," as required by the Fifth Circuit.  Instead, Plaintiffs incorrectly focus on the "absolute terms" of the judgment. App. at 15–16.  That is not the appropriate legal test.  The Supreme Court could not have been clearer:  "A reduced fee award is appropriate if the relief, however significant, is limited *in comparison to the scope of the litigation as a whole.*"  *Hensley*, 103 S. Ct. at 1943.  Plaintiffs have obtained very limited success relative to the claims they brought and the penalties and other relief sought.  The lodestar should be reduced accordingly. The ExxonMobil Defendants respectfully suggest that the Court should follow what courts "routinely" do and reduce any fee award to 2.9 percent of the properly calculated lodestar to reflect Plaintiffs' success against the relief they sought.

## V.    Plaintiffs improperly rely on the *Johnson* factors to double dip on attorneys' fees.

After having achieved a fraction of success on their claims, Plaintiffs are overly presumptuous in requesting an upward adjustment (rather than a downward

adjustment) to their lodestar, based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  Furthermore, the *Johnson* factors, although not explicitly overruled, have been criticized by the Supreme Court.  *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1671–72 (2010); *Combs v. City of Huntington*, Texas, 829 F.3d 388, 395–96 (5th Cir. 2016).

In criticizing the *Johnson* factors, the Supreme Court has noted that several of these factors are already included in the lodestar calculation.  "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 130 S. Ct. at 1673; *see Montanez v. Simon*, 755 F.3d 547, 556 n.2 (7th Cir. 2014) ("[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.").

For example, the Supreme Court held that the "novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates." *Blum v. Stenson*, 104 S. Ct. 1541, 1549 (1984).  Similarly, "[t]he 'quality of representation,' . . . generally is reflected in the reasonable hourly rate." *Id.*  Similarly, the customary fee charged, and the time and labor required, are also included in the lodestar rate.  *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 338 (5th Cir. 1995).

Plaintiffs' fee application illustrates this double-dipping.  For example, Plaintiffs merely refer to the "discuss[ion] above" for the first factor.  Plaintiffs engage in little to no analysis on any of the factors to demonstrate how those factors were not already included in their lodestar calculation.

In addition to the several factors listed above that are already included in the lodestar calculation,[11] Plaintiffs concede that the sixth and seventh *Johnson* factors are not relevant.  App. at 15.  Similarly, Plaintiffs have no knowledge of similar cases and, thus, the twelfth factor is not relevant either.  *Id.* at 18–19.

Additionally, Plaintiffs' reliance on the supposed undesirability of pursuing this case is unfounded.  Plaintiffs broadly advertised their pursuit of the case, as well as its result.  Ex. B.  The undesirability factor is intended to justify a higher fee if the lawsuit "is not pleasantly received by the community or his contemporaries." *Johnson*, 488 F.2d at 719.  There is no evidence that Plaintiffs' lawyers have been met with any adverse reaction by the community or colleagues that would justify an increase in lodestar amount based on this factor.  This *Johnson* factor is intended to guard against lawyers being dissuaded from pursuing claims, but the exact opposite situation in fact exists here.  Plaintiffs' lawyers devote their practice to bringing

---

[11]The factors already included in the lodestar are the first (time and labor required), second (novelty), third (quality of representation), fifth (customary fee charged), and ninth (also related to the quality of representation). The other factors cited by Plaintiffs—factors four (refusal of work on other cases) and eleven (attorney-client relationship)—as demonstrated by the one sentence that Plaintiffs spend on each, are not significant and do not outweigh the "most important factor," the Plaintiffs' amount of success.

citizen suits.  App. Ex. 5, 14.  As noted above, it was Plaintiffs and their counsel who solicited standing members to use in the lawsuit.  App. Ex. 1 at 2; Ex. 7 at 3; Trial. Tr. 1-193:5–7; 1-158:3–1:160:14; 2-153:8–2-155:18; 6-42:20–6-43:17; 6-91:23–6-92:6.

There is no credible evidence to support Plaintiffs' suggestion that this case was undesirable to them.  To the contrary, Plaintiffs and their counsel put forward evidence of cookie-cutter claims that they had made in the past against other companies.  Trial Tr. 1-238:1–1-239:8; PX568; PX 569.  Plaintiffs have publicly advertised their readiness to pursue such "gotcha" claims—that is, claims that rely solely on regulatory filings made by companies to state regulators—against other companies in the future.  Exs. B, C.  They have placed an advertisement on the homepage of their lawyers' website to this effect.  Ex. D.[12]

If anything, this factor of the "desirability" of claims to counsel who pursue such claims by the very nature of their practice weighs in favor of a reduction of the lodestar.  Thus, the only remaining relevant factor that is at issue is the amount of Plaintiffs' success (factor eight).  As demonstrated above, that factor weighs heavily in favor of a drastic cut to Plaintiffs' fee request.

---

[12]National Environmental Law Center, Homepage, *available at* https://www.nelconline.org/ (accessed November 1, 2017).

## VI.   Plaintiffs' Request for Expert Fees for Edward Brooks and Rajanit Sahu Are Unreasonable and Do Not Correlate to Their Limited Success

As indicated above, the experts Edward Brooks and Rajanit Sahu did not contribute to Plaintiffs' limited success, as is shown by the Court's negative treatment of their testimony during the proceedings.  In addition to reducing the attorneys' fees time associated with developing and presenting "expert" opinions from these two witnesses in reports, depositions, and trial, the fees associated with their work should not be awarded to Plaintiffs.  In fact, Plaintiffs implicitly recognize this by not seeking reimbursement of fees associated with Keith Bowers, an "expert" whose testimony was procured by Plaintiffs but likewise rejected by the Court.  Doc. No. 225-1, at 25–26.

Accordingly, even if Plaintiffs' application were considered now, instead of following the appeal of the underlying case, the request for reimbursement of expert fees should be reduced by $67,418.92 in the amounts billed by Brooks and Sahu.

### CONCLUSION AND PRAYER

The ExxonMobil Defendants respectfully request that the Court defer consideration of Plaintiffs' request pending appeal of the underlying matter.  The ExxonMobil Defendants make the alternative request that in the event the Court decides to consider Plaintiffs' request, that it reject Plaintiffs' request, or at minimum order that Plaintiffs provide further specificity in connection with their request, to correlate their request for fees with the limited success they achieved, or permit

35

discovery into the issue.  On the present record, should the Court not defer consideration it should deny the Plaintiffs' attorneys' fee request or, alternatively, lower the amount requested by Plaintiffs, based on their limited success and multiplication of issues that had no merit.

The ExxonMobil Defendants also request all other and further relief as they may show themselves to be entitled.

Respectfully submitted,

By:   /s/ Eric J.R. Nichols
        Eric J.R. Nichols
        State Bar No. 14994900
        Fed. ID No. 13066
        BECK | REDDEN L.L.P.
        515 Congress Avenue, Suite 1900
        Austin, Texas 78701
        Tel:  512-708-1000
        Fax:  512-708-1002
        Email:  enichols@beckredden.com
        **ATTORNEY-IN-CHARGE**
        **FOR DEFENDANTS**

**OF COUNSEL:**
BECK | REDDEN L.L.P.
Fields Alexander
State Bar No. 00783528
Fed. ID No. 16427
falexander@beckredden.com
Russell S. Post
State Bar No. 00797258
S.D. Tex. Bar No. 23206
Bryon A. Rice
State Bar No. 24065970
Fed. ID No. 1118643
brice@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Tel:  713-951-3700
Fax:  713-951-3720

<u>Certificate of Service</u>

The undersigned certifies that at true and correct copy of the foregoing document was served on all counsel of record through the court's electronic filing system on the 27th of November 2017.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols