UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

ENVIRONMENT TEXAS CITIZEN LOBBY, INC.,
and SIERRA CLUB,

               Plaintiffs,                           C.A. No. 4:10-cv-4969

     v.

EXXONMOBIL CORPORATION,
EXXONMOBIL CHEMICAL COMPANY, and
EXXONMOBIL REFINING AND SUPPLY COMPANY,

               Defendants.

_____

## REPLY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, EXPERT WITNESS FEES, AND COSTS

### SUMMARY

First, a ruling on the application should not be deferred because, among

other things, the federal rules do not contemplate deferral and it is in the public

interest to award fees now.  Second, the lodestar should not be reduced further for

lack of success.  Plaintiffs achieved an excellent result and already reduced the

lodestar by over 3,500 hours.  Third, counsel's time records substantiate the hours

that go into the (already reduced) lodestar.  Exxon fails to acknowledge that work

on Counts VI and VII overlap with work on other counts.  Discovery is

inappropriate on a fee application and is not needed here to "correlate" entries with

supposed "limited success."  Fourth, the declaration by Exxon's counsel does not refute the prevailing rates established by Plaintiffs' expert Craig Smyser.  Fifth, the number of hours for which compensation is sought is reasonable.  Plaintiffs do not seek compensation for work on unmeritorious theories or claims.  Sixth, the lodestar should increase under the *Johnson* factors.

## I.   A RULING ON THE APPLICATION SHOULD NOT BE DEFERRED.

In the Revised Findings of Fact and Conclusions of Law ("Revised Findings"), Doc. No. 257, the Court granted Plaintiffs' request for attorneys' fees, expert witness fees, and costs and directed Plaintiffs to file an application for same within 90 days, a date falling *after* the deadline to file a notice of appeal.  After Exxon filed its motion to alter or amend the judgment (Doc. No. 260), the Court granted Plaintiffs' unopposed motion to extend the time to file the fee application until 60 days after disposition of the motion to alter or amend – again, *after* the deadline to file a notice of appeal.  Doc. No. 272.  Had the Court wanted to defer a ruling on the fee application, it presumably would have directed Plaintiffs to file the application after any appeal was resolved.  Also, at any time following the issuance of the Revised Findings Exxon could have asked to defer a ruling on fees, but it chose not to do so until now.  Plaintiffs respectfully request that the Court exercise its discretion and maintain its original approach, and not wait until the appeal is decided to rule on Plaintiffs' application.

Exxon's rationale for deferring is that the penalty may be reduced on appeal. Doc. No. 287 ("Exxon Br."), pp. 5-6.  Of course, every case theoretically could be overturned on appeal, but that clearly caused no concern to Congress:  in Fed. R. Civ. P. 54(d)(2)(b)(i) it set a default deadline of fourteen days after judgment for a fee application.  Had Congress wanted fee applications to wait until after any appeal is decided, it could have so provided.  *See Terket v. Lund*, 623 F.2d 29, 34 (7th Cir. 1980) (district courts ordinarily "should proceed with attorneys' fees motions, even after an appeal is filed, as expeditiously as possible").

In fact, a plaintiff in an environmental citizen suit is entitled to "interim fees" even "where the fee claimant has established the liability of the opposing party but no remedial orders have been entered."  *Nat'l Wildlife Fed. v. Hanson*, 859 F.2d 313, 316 (4th Cir. 1988) (interim fees granted in Clean Water Act ["CWA"] suit); *see also Cohen v. Coahoma Cty., Miss.*, 805 F. Supp. 398, 408 (N.D. Miss. 1992) (civil rights case quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 339 (5th Cir. 1981), that "[i]n the absence of special circumstances making an award of [ ] interim fees unjust…a prevailing party is entitled to an interim award").  Interim fees are especially appropriate in environmental citizen suits because, "[u]nlike plaintiffs in traditional civil actions, plaintiffs in environmental suits do not seek to vindicate personal rights and they obtain no financial benefit if they win," rather, they "promote the purposes of the"

act they are suing to enforce. *Hanson*, 859 F.2d at 317. As the Fifth Circuit noted in a civil rights case, interim fees ensure "effective access to the judicial process" for plaintiffs seeking to vindicate important public rights. *Allen v. La. State Bd. of Dentistry*, 948 F.2d 946, 947 (5th Cir. 1991) (cite omitted); *see also Hanson*, 859 F.2d at 316-317 (fee awards should be interpreted in light of CWA goals to encourage citizen enforcement). Timely fee awards are especially important in lengthy public interest litigation, lest defendants be "tempted to seek victory through an economic war of attrition against the plaintiffs." *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 359 (5th Cir. 1977).

Since a final judgment has been entered here, the rationale for ruling on the fee application now – as contemplated by the federal rules – is even stronger. *See Lyon v. Kimberly Clark Corp. Pension Plan*, No. 05-3201, 2007 WL 1852215, at *1 (D.N.J. June 26, 2007) ("Defendant has proffered no reason why a pending appeal alone should constitute sufficient grounds for this Court to deny Plaintiff's motion" for attorney's fees).

This case was filed seven years ago. Plaintiffs' attorneys took the case on contingency, and have received no fees. The Court can itself assess the prospects for a successful appeal, but based on the grounds in the motion to alter or amend the judgment, Exxon's arguments do not appear to be of the kind that would significantly alter this Court's ruling on appeal. In addition, if the Court awards a

meaningful amount of fees, Exxon doubtless will appeal that judgment as well.[1]

## II. THE LODESTAR SHOULD NOT BE REDUCED FURTHER FOR "LIMITED" OR "LACK OF" SUCCESS.

### A. Plaintiffs Obtained A Record-Setting Penalty, Which Is Significant Even Though The Maximum Possible Penalty Was Higher.

Exxon does not contend that the penalty obtained in this case is not an excellent result for Plaintiffs.  As Exxon itself stated to the Court of Appeals on December 5, 2017, in a motion for an extension to file its appellate brief, the judgment in this case "has been recognized as the largest civil penalty ever awarded to citizen-suit litigants under the CAA…"  Reply Appendix Exhibit 2. Nor does Exxon contest that the penalty is "one of the largest in any case brought by either government agencies or third parties against a single facility."  Doc. No. 280-39, ¶ 15(a) (Eric Schaeffer declaration).[2]  Moreover, Plaintiffs prevailed on nearly 90% of the emission events and permit deviations covered by their claims. Reply Declaration of Joshua R. Kratka ("Kratka Reply Dec.", Reply App. Ex. 1), ¶ 4.

---

[1] "If the district court is unable to decide the attorneys' fees issue while the appeal is pending, it will often be forced to wait some months before the appeal is decided and then return to the case and attempt to recall the merits of the parties' positions, the reasonableness of the attorneys' time sheets, the competence of the attorneys, etc. …  Furthermore, the district court's ruling on the attorneys' fees motion might then be appealed, requiring a similar duplication of effort, possibly by different judges, at the appellate level."  *Terket*, 623 F.2d at 34.

[2] In contrast, in *Friends of the Earth v. Eastman Kodak Co.*, 834 F.2d 295, 298 (2d Cir. 1987), cited by Exxon, a consent decree between the parties simply required the defendant to pay $49,000 to a foundation.

Nonetheless, Exxon argues that the lodestar should be reduced because "Plaintiffs recovered less than two percent of the amount they originally sought when they filed this action." Exxon Br., p. 28. However, the Fifth Circuit has made clear that such a comparison is relevant only to suits for *private compensation*. *Combs v. City of Huntington, Texas*, 829 F.3d 388, 395-396 (5th Cir. 2016); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998). A civil rights case cited by Exxon, *Saleh v. Moore*, 95 F. Supp. 2d 555 (D. Md. 2000), *aff'd sub nom. Saleh v. Upadhyay*, 11 F. App'x 241 (4th Cir. 2001), is instructive. In *Saleh*, one of the plaintiffs asked for $20 million in damages in the complaint, $2.2 million in a settlement conference, and $500,000 each for compensatory and punitive damages at trial. A jury awarded him $97,769 in compensatory damages and $19,580 in punitive damages against the defendant university and its leaders. The defendants argued that the monetary award illustrated "minimal success" and thus deserved a "minimal fee." *Id.* at 574-575. The court disagreed that minimal success was achieved, noting (a) "tethered to the proof, the degree of success in the compensatory aspect of the case actually was quite good," *id.* at 575; (b) "the *fact* of monetary punishment is often as important as the *amount* of the punishment in serving [a] deterrent purpose," *id.*; (c) the monetary award has an *"in terroram* effect*"* on other universities and furthers important public policy interests, *id.* at 578; and (d) the amount specified in the

6

complaint is not pertinent, as "those figures more often than not are more aspirational than factual," *id.* at 575.

Here, Exxon was penalized a record amount, and Exxon does not dispute that a substantial penalty "encourages other petrochemical plants to take prompt action to reduce the frequency and severity of [emission events]."  Doc. No. 280-39 ¶ 15(a) (Schaeffer Dec.).[3]  Moreover, while Plaintiffs suggested that the penalty factors support little or no downward adjustment from the maximum (not in the Complaint, which sought no specific amount [Doc. No. 1], but in pretrial proposed Conclusions of Law [Doc. No. 164-19]), that had no effect on the quantum of proof required at trial, because the Court was obligated to weigh evidence regarding all seven penalty factors, no matter what penalty was suggested by Plaintiffs.  42 U.S.C. § 7413(e)(1) (court "shall" consider these factors); *Pound v. Airosol Co.*, 498 F.3d 1089, 1095 n.3 (10th Cir. 2007).

### B.   Plaintiffs Were Highly Successful Even Without Obtaining Declaratory Relief Or An Injunction.

Exxon also argues that the lodestar should be reduced because Plaintiffs failed to obtain injunctive or declaratory relief.  But in *Hensley v. Eckerhart,* 461 U.S. 424 (1983), the Supreme Court stated that "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award

---

[3] As the *Saleh* case illustrates, Plaintiffs' entitlement to a fee reflecting their lodestar is not dependent on the record-setting nature of the penalty; a smaller, but still substantial, penalty would also have represented a successful outcome.

based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* at 435, n.11. *See also id.* ("We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors.").

Thus, in *Ohio Valley Envtl. Coal., Inc. v. Fola Coal Co.*, 2:13-5006, 2016 WL 8252928, at *3 (S.D. W.Va. Aug. 30, 2016), a citizen suit under the Clean Water Act and the Surface Mining Control and Reclamation Act ("SMCRA"), the court rejected the type of argument made here by Exxon:

> When requested relief "involve[s] a common core of facts or [are] based on related legal theories[,]…the district court should focus on the significance of the overall relief obtained by the plaintiff." *Hensley*, 461 U.S. at 435. Civil penalties are often brought as an alternative to injunctive relief. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* 528 U.S. 167, 174 (2000) ("Such penalties may serve, as an alternative to an injunction, to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation."). Here, the same facts functioned as Plaintiffs' basis for obtaining either civil penalties or injunctive relief, namely that Defendant violated the CWA and the SMCRA with its mine discharges of ionic pollution. [Cite omitted].

*Id.* at *3. That court had issued an injunction without a penalty, but declined to "reduce the fee award [for lack of a penalty assessment], since civil penalties merely served as a form of alternative relief." *Id.*

Nor does the fact that this Court did not issue a formal declaratory judgment require a further reduction of the lodestar. The Court determined a declaratory

judgment was unnecessary because it had otherwise ruled that the violations were actionable and subject to penalty.  This ruling was significant, as explained in Plaintiffs' Fee Application.  Doc. No. 280, p. 16.

## III.   PLAINTIFFS' ATTORNEYS' TIME RECORDS SUBSTANTIATE THE HOURS THAT GO IN TO THE LODESTAR.

Exxon argues that Plaintiffs' fee request should be denied or cut because, according to Exxon, in some (unidentified) time entries Plaintiffs did not "correlate time worked to the limited success achieved by Plaintiffs."  Exxon Br., p. 10.

### A.   Plaintiffs Already Reduced Hours Significantly.

Exxon refuses to acknowledge that *Plaintiffs subtracted more than 3,500 hours (27.5%) from their lodestar*, which more than accounts for any asserted "limited success."  And despite having nearly two months to respond to Plaintiffs' application, Exxon did not identify the time entries to which it objects on the "failure to correlate" ground.[4]  Exxon's complaint that Plaintiffs did not provide sufficient specificity to "allow ... a line-item examination" of their time records (Exxon Br., p. 23) is unfounded.  Not only did Plaintiffs provide detailed, chronological time sheets from each of the attorneys for whom fees are sought, but they also provided a second time sheet for each attorney that groups the work by discrete tasks.  *See Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, No. CCB

---

[4] Exxon merely claims that "dozens" of (Exxon Br., p. 10) and "more than 100" (Doc. 287-1, ¶ 5 [Nichols Declaration]) time entries, out of the many thousands submitted, do not provide enough detail, but does not even provide the dates of those entries.

14-5533, 2016 WL 3440191, at *2 (D. Md. June 23, 2016) (grouping of time sheet entries by phase of litigation provided additional context for evaluating reasonableness); *compare Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir. 1997) (computer printout just of total hours and rates deemed sufficient). *See also Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d 1160, 1169 (5th Cir. 1991) (rejecting fee reduction, where fee opponent failed to substantiate that work was performed on unsuccessful issues); *Saleh*, 95 F. Supp. 2d at 569 (rejecting objection to hours, where fee opponent submitted "vague, general affidavits which do not identify particular time entries, or even groups thereof").[5]

### B. Work Related To The Two Counts On Which Plaintiffs Did Not Prevail Overlapped With Work On Counts On Which Plaintiffs Did Prevail.

Although Plaintiffs did not prevail on Counts VI and VII, the lodestar should not be reduced further, because work on those counts substantially overlapped with successful work on Counts I-V.  The Supreme Court has held that "where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  *Hensley*, 461 U.S. at 440; *accord Hernandez v. Hill Country Tel. Co-op, Inc.*, 849 F.2d 139, 144 (5th Cir. 1988).  "The *Hensley* court teaches

---

[5] *Cf. Envt. Texas Citizen Lobby v. ExxonMobil Corp.*, H-10-4969, 2017 WL 2331679, at *17 (S.D. Tex. April 26, 2017) (rejecting Exxon's challenge to violations spreadsheets on remand after it did not challenge them earlier).

that claims for relief that involve a common core of facts… cannot be viewed as a series of discrete claims." *Id*.  Here, Counts VI and VII each shared a common core of facts with one or more of Counts I-V.

This Court found that violations under Count VI (fugitive emissions that occurred during emission events) "overlap" with other counts, *Exxon*, 2017 WL 2331679, n.212, and determined these fugitive emissions to be violations under Counts I and II.  Tr. Ex. PX006, Doc. No. 164-12.[6]  And Plaintiffs prevailed on nearly half the 901 Title V permit deviations alleged under Count VII.  Kratka Reply Dec. ¶ 4.  The Court held that 415 of those deviations "are addressed in the Court's findings related to Reportable Events or Recordable Events." *Exxon*, 2017 WL 2331679, at *4.  And the Court found Exxon liable for an additional 25 deviations under Counts IV (smoking flares) and V (pilot flame outages).  Kratka Reply Dec. ¶ 4.

### C.    Exxon's Request For Discovery Should Be Denied.

"'Rule 54 [of the Federal Rules of Civil Procedure] explicitly contemplates that a claim for attorneys' fees would be made by motion' rather than through discovery and an evidentiary hearing." *New Mexico v. Valley Meat Co.*, No. CIV 14-1100, 2015 WL 9703255, at *27 (D. N.M. Dec. 14, 2015) (quoting *Boardwalk*

---

[6] As the Court is also aware, Count VI played a negligible role in the case and at trial.  Plaintiffs claimed only 233 days of violation under Count VI (Tr. Ex. PX014), which is approximately 1% of the 22,618 days of violations ultimately found by the Court under all counts.

*Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, 2014 WL 5430252, at \*2-3

(D. Kan. Oct. 24, 2014).  The holding in *Boardwalk Apartments* is applicable here:

> [Plaintiff] has submitted exhaustive evidence of its billing records and invoices sufficient to enable [Defendant] to contest the reasonableness of the fees.  To the extent [Defendant] is unsatisfied with the information contained in these records, it may so argue, however the Court denies the request to order further discovery…

*Boardwalk Apts.*, 2014 WL 5430252, at \*4.

Discovery for the purpose of "correlating" time entries with alleged "limited success" would serve only to delay and increase the expense of the fee application, especially since Plaintiffs' extensive and clearly-delineated cuts of 3,500 hours represent far more time than any hours arguably spent on "unmeritorious" claims.

## IV.   THE HOURLY RATES SOUGHT ARE REASONBLE.

The hourly rates sought are consistent with:  the rates Exxon itself paid for environmental work in other cases, *see* Doc. No. 280-12; the rates Beck Redden seeks in its fee applications, *see* Doc. Nos. 280-13 – 15; and the expert opinion of a Beck Redden attorney, who testified that similar rates were reasonable in a 2013 Southern District of Texas case, *see Preston Exploration Co., LP v. GSP, LLC*, No. H-08-3341, 2013 WL 3229678, at \*5 (S.D. Tex. June 25, 2013).  And in a Western District of Texas case discovered by Plaintiffs after filing their application, Beck Redden attorney Russell Post, an Exxon attorney in the case at bar, submitted an affidavit stating that a \$650 hourly rate for a partner with only 20.5 years of

experience, and $365 to $405 rates for associates with 5-8 years of experience, are
"reasonable and *even below the market average*."  Reply App. Ex. 3.

Nonetheless, Exxon asserts Plaintiffs' senior attorneys are due only
$353/hour.  This figure comes from a declaration filed by Exxon's lead counsel,
Eric Nichols, who attempts to designate himself as an expert regarding Plaintiffs'
fees.  *See* Doc. No. 287-1, ¶¶ 3, 6-9.  This figure should be rejected for several
reasons.  First, Mr. Nichols' inherent conflict of interest renders this opinion
unreliable.  *See Samost v. Luborsky,* No. 13-7365, 2017 WL 960347, at *4 (D. N.J.
March 13, 2017) (rejecting challenge to plaintiff's hourly rate where defendant did
not produce affidavit on prevailing rates from "non-party" attorney) (appeal filed).

Second, Mr. Nichols' declaration does not address the prevailing rates in the
district for senior or junior level attorneys, but rather simply states that $353/hour
is the "blended rate" charged to Exxon in this case by the Beck Redden and
Winstead firms.  In contrast, Plaintiffs' expert Craig Smyser explained that the
rates sought are "well within the customary range of hourly rates for attorneys with
comparable skill and experience."  Doc. 280-37, ¶ 15.[7]

Third, Mr. Nichols offers no factual foundation or methodology to support

---

[7] Exxon does not cite a case holding that a party must "designate" an expert for a federal court
fee application.  It only cites a case construing Texas *state* law.  *15626 Ft. Bend Ltd. v. Sentry
Select Ins. Co.*, 991 F. Supp. 2d 932, 946-947 (S.D. Tex. 2014).  As many of the cited cases
indicate, proving rates through an expert declaration is a common practice in federal court.
Nevertheless, Plaintiffs did in fact retain Mr. Smyser as an expert.  Doc. 280-37, ¶ 1 ("I have
been retained as an expert…")

this "blended rate." Which lawyers (and how many) are subsumed in that blended

rate? Were an excessive number of hours billed by junior level associates, bloating

the total fee but bringing down the hourly average? What rates did Mr. Nichols

and other partner-level attorneys charge? Did they reduce their rates for any tasks

(as Plaintiffs' counsel did)? Were the firms' rates discounted, or was time not

billed, to entice future work from Exxon, a major client? Did Exxon's counsel

spend a greater number of hours on the case than Plaintiffs' counsel? Was the total

bill to Exxon greater than the $6 million Plaintiffs seek? Why is the work by

Baker Botts attorneys, whose average partners' rate is $788/hour (with some

partners billing at $1,050/hour),[8] omitted from the proffered blended rate? The

lack of factual and methodological bases renders the $353/hour figure meaningless.

*See Daniels v. Wells Fargo Home Mortg.*, No. 6-12-163, 2013 WL 1222413, at *8

(S.D. Tex. February 21, 2013), *recommendation adopted*, 2013 WL 12134100

(March 12, 2013) (rejecting request for attorneys' fees because declaration

purporting to establish blended rate failed to identify "who performed the work,

what work was performed by whom, [or] how the blended rate was calculated").

Fourth, Exxon misuses the "blended rate" concept by asking this Court to

apply that rate wherever a higher rate is used by one of Plaintiffs' senior counsel.

But a blended rate is a weighted *average* of high rate hours, low rate hours, and

---

[8] *See* Reply App. Ex. 4 (2016 National Law Journal survey excerpt showing Baker Botts rates).

hours not billed at all, by multiple attorneys. Plaintiffs' blended rate would include the 3,506 hours Plaintiffs cut – much of it from senior counsel's time – in an exercise of billing discretion. *See* Doc. No. 280-3 (Plaintiffs billed for 9,215 hours out of 12,720 hours actually worked by listed attorneys). Exxon does acknowledge that Plaintiffs' senior counsel are seeking only $310/hour for time spent doing legal research, but ignores the fact that senior counsel billed $0/hour for travel time and administrative type work. Taking these factors into account, Plaintiffs' blended rate is $425/hour. *See* Kratka Reply Dec. ¶ 2.

Fifth, Exxon asks this Court to impose restrictions on Plaintiffs' fee request that Exxon's attorneys do not apply to their own fee requests. Exxon criticizes Plaintiffs' counsel for seeking their normal rate for work on a range of litigation tasks, but fails to disclose that, in the recent Beck Redden fee application referenced above, Beck Redden attorneys sought their *full rate* for *all work*. *See* Reply App. Ex. 3 (Mr. Post's rate of $650/hour applied to all work, including travel time (4/7/16, 5/5/17), "correspondence regarding schedule" (1/19/17), and all other "correspondence," phone calls, and "conference" entries).

## V.   THE NUMBER OF HOURS IS REASONABLE.

Exxon argues that the number of hours for which Plaintiffs seek compensation is unreasonable because it includes (1) work on "unmeritorious theories and claims," and (2) work that "is not recoverable." Exxon Br. at 19, 23.

A. **Plaintiffs Do Not Seek Compensation for Work on "Unmeritorious Theories and Claims."**

Exxon points to a group of emission events at the Baytown Refinery that the Court ruled at summary judgment were barred from this case on res judicata grounds. Exxon Br. at 19. These events did not constitute a separate claim; they were a small subset of the thousands of violations under Counts I and II on which Plaintiffs prevailed. And despite the res judicata ruling, those events – the undisputed details of which were trial evidence (Tr. Ex. PX008) – were relevant to the penalty analysis, as evidence of history of violations. Thus, work compiling those violations and placing them into evidence is compensable. Moreover, Plaintiffs *did* cut 54.5 hours from time spent briefing their opposition to Exxon's summary judgment motion (25% of the total for that category) and 33.5 hours from the time spent on legal analysis of summary judgment claims generally (50% of the total for that category), which more than covers time devoted to the res judicata point. *See* Doc. No. 280-3, pp. 5-6 (categories 8.10 and 8.1, respectively).[9]

Exxon also claims that Plaintiffs "multiplied the costs of this litigation" by seeking liability and the maximum penalty for recordable emission events and violations not directly involving emissions. Exxon Br. at 19. First, it is somewhat perverse to blame Plaintiffs for the sheer number and variety of Exxon's violations.

---

[9] Plaintiffs' time records indicate that approximately 85.6 hours were spent on res judicata issues, although some of this time also includes work on Exxon's unsuccessful argument that this case was barred by TCEQ administrative action. Kratka Reply Dec. ¶ 3.

Second, the Court ruled before trial that recordable emission events were a proper part of the case, Doc. No. 145, and that violations that do not involve emissions can be serious, Doc. No. 126 at 18. Exxon's attempts to get Plaintiffs to "focus the case" (Exxon Br. at 22) were thus squarely rejected, not just by Plaintiffs, but by this Court. Further, Plaintiffs followed the approaches to penalty calculation prescribed by the Fifth Circuit: both the "top down" and "start with economic benefit" approaches pointed toward the maximum statutory penalty when the seven penalty criteria (including Plaintiffs' original economic benefit calculation) were applied to the body of violations as a whole. That approach actually *avoided* a time-intensive focus on every line in every violation spreadsheet.

### B.    Plaintiffs Seek Compensation Only for Compensable Work.

Exxon identifies 844.8 hours of attorneys' work that it claims are not recoverable. These proposed cuts are dwarfed by the 3,506 hours Plaintiffs already cut, and Plaintiffs' exercise of billing judgment thus "more than accounts for the challenged entries." *Holy Cross v. U.S. Army Corps of Eng'rs*, No. 03-370, 2008 WL 2278112, at *4 (E.D. La. May 30, 2008). Moreover, Exxon's argument that *zero* attorney hours and expert fees should be allowed for several specific categories of work (at Exxon Br. 23-26) is groundless.[10]

---

[10] Exxon cannot be heard to complain now that its list of "facially improper" work categories is "not exhaustive" (Exxon Br. at 23, 27): Plaintiffs acceded to all the additional time and

- *Drafting the Complaint*:  Plaintiffs prevailed on nearly all counts and should be compensated for drafting the Complaint.  Only one paragraph was devoted to Refinery consent decree events.  Doc. No. 1 (Complaint), ¶ 88.

- *Briefing Plaintiffs' motion for summary judgment*:  The Fifth Circuit decision and this Court's Revised Findings make clear the motion was meritorious as to Counts I through V.  Plaintiffs already cut their hours on this task by 25% (47 hours), which more than takes into account time spent on Counts VI and VII.  *See* Doc. No. 280-3, p. 6 (category 8.9).

- *Work with standing witnesses*:  This work is compensable because standing is essential to jurisdiction, Exxon vigorously challenged these witnesses at depositions and trial, and Plaintiffs successfully established the elements of standing through their testimony.

- *Search for air dispersion modeling experts*:  Plaintiffs *already cut* the 30.3 hours devoted to this work that Exxon argues should be cut.  *See* Doc. No. 280-3, p. 3 (category 5.1); Doc. No. 280-16, ¶ 26.

- *Work with Keith Bowers*:  Plaintiffs already cut 176.3 hours related to Mr. Bowers, to account for the Court's rejection of portions of his opinion.  *See* Doc. No. 280-3, pp. 4, 6 (categories 5.4 – 5.6; 9.14 – 9.15), Doc. No. 280-16, ¶¶ 27, 31.  The remaining work was necessary for advising counsel on arguments and proof involving technical issues; evaluating and rebutting the opinions of expert Christopher Buehler, and preparing his examinations; and evaluating the affirmative defense.  Kratka Reply Dec. ¶ 5.

- *Attorney hours related to, and fees for, Dr. Edward Brooks.*  Dr. Brooks was needed to advise Plaintiffs' counsel regarding arguments and proof involving air quality, regulatory exposure thresholds, and potential impacts of Exxon's pollutants; evaluating and rebutting the opinions of Exxon's experts David Cabe and Lucy Fraiser, and preparing their examinations; and his testimony regarding the symptoms from exposure to the pollutants illegally emitted by Exxon bolstered the standing testimony of Plaintiffs' members.  Kratka Reply Dec. ¶¶ 6, 7.

---

additional pages Exxon said it needed for its response.  *See* ECF Nos. 283 & 285 (motions for same were unopposed).

- *Attorney hours related to, and fees for, Ranajit Sahu.*  Mr. Sahu was needed to advise Plaintiffs' counsel regarding arguments and proof involving unauthorized emissions; evaluating and rebutting the opinions of Exxon's experts Philip May (who, consequently, was never called at trial), Mr. Cabe (regarding air dispersion modeling and air monitoring), and Randy Parmley, and preparing their examinations.  Kratka Reply Dec. ¶ 6, 8.

- *Preparing Dr. Neil Carman as an expert on ozone*:  Dr. Carman assisted Plaintiffs' counsel regarding arguments and proof involving the contribution of Exxon's unauthorized emissions to ozone.  Counsel decided not to call him as a rebuttal witness at trial because Exxon's expert, Mr. Cabe, admitted to key facts regarding ozone formation.  Kratka Reply Dec. ¶ 9.

- *Reviewing clients' press materials*:  Exxon has repeatedly put before the Court Plaintiffs' press statements and written materials, requiring counsel to review them.  The case Exxon cites is inapposite, as it concerns time attorneys *themselves* spent doing "press releases, television interviews, radio appearances, and interviews with reporters," *Cushing v. McKee*, 853 F.Supp. 2d 163, 174 (D. Me. 2012), not legal review of their clients' statements.

- *Work on pending Exxon appeal*:  Exxon cites no case holding that such work cannot be compensated at this stage.

- *Work "not specific to this case"*:  These hours were for legal and factual research on issues necessary to this case:  changes or potential changes to permits and regulations at issue in this case; developments in similar enforcement cases; and a prosecution by the Harris County Attorney (which resulted in a deduction from this Court's penalty assessment).

- *Work preparing trial examination of Jeffrey Kovacs*:  Mr. Kovacs was called by both parties at trial, and testified at length on a very wide range of issues. The time spent preparing his examination was absolutely necessary, and not an "abandonment of self-restraint."  Exxon Br., p. 14.

## IV.   THE LODESTAR SHOULD INCREASE UNDER THE *JOHNSON* FACTORS.

Exxon suggests that the *Johnson* factors should not be considered.

However, this Court recently "considered each of the *Johnson* factors as applied to [the case before it]" to determine whether they are adequately reflected in the lodestar. *Fleming v. The Momenta Group, LLC*, No. H-15-00075, 2016 WL 7742788, at \*4 (S.D. Tex. April 27, 2016). And in a recent filing in the Fifth Circuit, Exxon directly contradicts its suggestion here that the claims in this case were "cookie-cutter," instead representing to that court that this case involved "a number of unusually complicated legal issues." Reply App. Ex. 2**;** *see also* Doc. No. 270, p. 2 (Exxon stated this case is "one of the most complex Clean Air Act citizen suits to be tried in federal court").

## <u>CONCLUSION</u>

$6,070,835.91 should be awarded to Plaintiffs on their fee application.

Respectfully submitted this 14th day of December, 2017,

<table>
<tr><td>

*/s/ Philip J. Hilder*
Philip J. Hilder
State Bar No. 09620050
Southern District of Texas Bar No. 2474
Hilder & Associates, P.C.
819 Lovett Blvd.
Houston, Texas  77006-3905
(713) 655-9111 (phone)
(713) 655-9112 (fax)
ATTORNEY-IN-CHARGE
FOR PLAINTIFFS


Counsel for Plaintiffs

</td><td>

*/s/ David A. Nicholas*
S.D. Tex. Bar No. 896677
20 Whitney Road
Newton, Massachusetts  02460
(617) 964-1548 (phone)
(617) 663-6233 (fax)

*/s/ Joshua R. Kratka*
S.D. Tex. Bar No. 962922
National Environmental Law Center
294 Washington Street, Suite 500
Boston, Massachusetts  02108
(617) 747-4333 (phone)
(617) 292-8057 (fax)

</td></tr>
</table>

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing was served on all counsel of record through the court's ECF system and in compliance with the Federal Rules of Civil Procedure on this 14th day of December, 2017.

<u>*/s/ Joshua R. Kratka*</u>
Joshua R. Kratka